Application of John R. **WILLINGHAM.**
Patent Appeal No. 6560.

United States Court of Customs
and Patent Appeals.
July 20, 1960.

Rehearing Denied Oct. 10, 1960.

Harness, Dickey & Pierce, Detroit, Mich. (John A. Blair, Detroit, Mich., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

SMITH, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the primary examiner of claims 3 and 6 of appellant's application No. 577,426, filed April 10, 1956 for reissue of his patent No. 2,674,908. The sole basis of the rejection is that appellant is precluded from obtaining the appealed claims in a reissue of his patent by reason of the substitution of claim 15 for unrejected claim 12 during the prosecution of his original application. In the opinion of the board, claim 12 included "the heart of the invention recited in claims 3 and 6."

For purposes of comparison, claim 3, which is typical of the appealed claims, and original claim 12 are reproduced below.

"3. A deep hole drill comprising a shank, a drill tip on the end of said shank, at least one flute in the peripheral surface of said shank and tip, said shank having an opening extending longitudinally therethrough, said tip having a hole extending from its end surface and communicating with the opening through said shank and being eccentric with respect to the longitudinal axis of said tip, said hole including the axis of said tip,

and cutting edges formed at the end of said tip."

"12. A deep hole drill comprising a drill tip secured to a hollow shank, the diameter of which is less than that of the drill tip, said shank and drill tip having a plurality of equally spaced longitudinally positioned straight flutes providing longitudinally disposed lands with chip channels between the lands, the leading sides of the lands providing chip scraping edges, and said drill tip and shank having an eccentrically positioned longitudinally disposed opening extended therethrough, said opening being adapted to receive a centrally positioned pin cut by the drill tip and being eccentrically positioned provides a fluid channel at one side of the pin, said eccentrically positioned opening providing a cutting edge on one side of the tip of a greater length than a corresponding edge on the opposite side, and said cutting edge of the drill tip being positioned between the chip channels."

Appellant's device is a deep hole drill and comprises a shank having a longitudinal opening and a drill tip mounted on the shank and having a longitudinal opening communicating with the opening in the shank. The opening in the drill bit is eccentric with respect to the axis of the bit, and is large enough to include that axis. With this arrangement the rotation of the drill tip, which is provided with one or more cutting flutes, produces a hole having a solid core which is axial with respect to the bit but which is smaller than and lies within the bit opening, thus providing a longitudinal passage through which a drilling fluid may be supplied to the tip.

The issue here is whether the deletion of claim 12 from the original application and the substitution of the narrower claim 15 was due to an "error without any deceptive intention" which will permit a reissue of the patent under 35 U. S.C. § 251.

The record presented here as to the history of claim 12 in appellant's original application is extremely meager. It shows, however, that claim 12 was entered by a supplemental amendment on January 13, 1954, and was deleted and replaced by another claim by a supplemental amendment on February 10, 1954. No action by the examiner intervened between those amendments. Thus claim 12 was never rejected or otherwise acted on. The remarks which accompanied the claim when presented are not included in the record, nor are those which accompanied its deletion, except for the following paragraph:

"This amendment is submitted in view of an interview with the Examiner, in which it was thought that a claim, such as following, may place the application in condition for final action and allowance, and *the Examiner is most respectfully requested, at his discretion,* to substitute this claim for the claims of the application, and, if found allowable, pass the case to issue." [Emphasis added.]

The record does not show what prior art, if any was cited against appellant's original application or discussed at the interview which led to the substitution at the "discretion" of the examiner of claim 15 for claim 12 [1]. Thus, as stated in the brief for the Commissioner, "there is nothing in the record to indicate that cancelled claim 12 was definitely held unpatentable over prior art by the examiner."

The reissue provisions of the Patent Act of 1952, like the reissue provisions of the earlier patent statutes, are remedial in nature. They are based on fundamental principles of equity and fairness and should be so applied to the

[1]. Much speculation might have been eliminated from this case had the record shown a strict compliance by applicant's attorney with rule 133(b), 35 U.S.C. Appendix which requires "A complete written statement of the reasons presented at the interview as warranting favorable action."

facts in any given case that justice will be done both to the patentee and to the public. This governing principle as long ago as 1832, before there was statutory provision for granting reissues, was stated by Chief Justice Marshall in Grant, et al. v. Raymond, 6 Pet. 218, 8 L.Ed. 376, as follows:

> " * * * The great object and intention of the [Patent] act is, to secure to the public the advantages to be derived from the discoveries of individuals, and the means it employs are the compensation made to those individuals, for the time and labor devoted to these discoveries, by the exclusive right to make, use and sell the things discovered, for a limited time. That which gives complete effect to this object and intention, by employing the same means for the correction of inadvertent error, which are directed in the first instance, cannot, we think, be a departure from the spirit and character of the act.
>
>    \*    \*    \*    \*    \*    \*
>
> "It has been urged, that the public was put into possession of the machine, by the open sale and use of it under the defective specification, and cannot be deprived of it, by the grant of a new patent. The machine is no longer the subject of a patent. This would be perfectly true, if the second patent could be considered as independent of the first. But it is in no respect so considered. The communication of the discovery to the public has been made in pursuance of law, with the intent to exercise a privilege which is the consideration paid by the public for the future use of the machine. If, by an innocent mistake, the instrument introduced to secure this privilege fails in its object, the public ought not to avail itself of this mistake, and to appropriate the discovery, without paying the stipulated consideration. The attempt would be disreputable in an individual, and a court of equi-

ty might interpose to restrain him."
6 Pet. at pages 240–241.

35 U.S.C. §§ 251, 252 was enacted to provide the present statutory basis for the granting of reissues. These provisions differ in significant respects from the prior reissue statute (R.S. 4916, 35 U.S.C. § 64). The differences pertinent to the present issue are found in section 251 which authorizes a reissue to correct a wholly or partially invalid or inoperative patent when due to "error without any deceptive intention," and if as a result of such error, the patentee has claimed less than he had a right to claim.

The present reissue provisions (35 U.S. C. §§ 251, 252), thus give statutory effect to the view expressed by Mr. Justice Brown in Topliff v. Topliff, 1891, 145 U. S. 156, 12 S.Ct. 825, 36 L.Ed. 658, as follows:

> "To hold that a patent can never be reissued for an enlarged claim would be not only to override the obvious intent of the statute, but would operate in many cases with great hardship upon the patentee. The specification and claims of a patent, particularly if the invention be at all complicated, constitute one of the most difficult legal instruments to draw with accuracy; and, in view of the fact that valuable inventions are often placed in the hands of inexperienced persons to prepare such specifications and claims, it is no matter of surprise that the latter frequently fail to describe with requisite certainty the exact invention of the patentee, and err either in claiming that which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him ·the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake and he has been guilty of no want of reasonable deligence in discovering it, and no third persons have in the meantime acquired the

right to manufacture or sell what he had failed to claim. The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation. * * * " 145 U.S. at page 171, 12 S.Ct. at page 831.

In In re Byers, 230 F.2d 451, 43 CCPA 803, we affirmed the refusal of the Patent Office to allow the reissue claims because the court found that the changes made to the original claim were deliberately and intentionally made in order to secure a patent, and held that this was not the type of "error" contemplated in section 251 as justifying a reissue.

We think the present case is distinguishable on its facts from the Byers case and is a case of the type contemplated by Congress as justifying a reissue under section 251. Applicant, due to an error in prosecuting his original patent, did not secure as broad patent protection as he appears to have been entitled to secure since claim 15 which was submitted as a substitute for claim 12 is narrower than required to properly claim applicant's invention.

The result of this error was the issuance of a patent which appellant asserts in his reissue oath is defective in "unnecessarily limiting the device to a drill having 'straight' flutes, 'equally' spaced flutes, and lands with 'radially' positioned leading sides." There is also the assertion under oath that such error arose without fraudulent or deceptive intention on his part.

From our examination of reissue claims 3 and 6 and a comparison of these claims with deleted claim 12 of the original application and the allowed claim 15 of the original application, which became the single claim of the patent, we find that the reissue claims, while broader in scope than allowed claim 15, are somewhat narrower in scope than deleted claim 12. Reissue claims 3 and 6 are narrower than claim 12 with respect to the eccentric opening but are broader than this claim in the limitations relating to the flutes. Thus, the issue before us is not the issue presented in many reissue cases in which an applicant cancels a claim to secure the issuance of the patent and then seeks to recapture it by a claim of the same scope in a reissue application.

It remains to be considered whether such error occurred "without any deceptive intention." We are unwilling to impute a deceptive intention to the examiner in using his "discretion" to effect the deletion of claim 12 and the substitution of claim 15 therefor. This act, and not the act of appellant, is the final act which brought about the cancellation of claim 12. While we question the propriety of placing such a responsibility on an examiner, where, as here, he accepted it and acted upon it, we are bound to pass on the nature of the resulting "error" rather than upon the question of the propriety of placing this responsibility on the examiner.

Was there a deceptive intention on the part of appellant in requesting the examiner "in his discretion" to make the changes? We think not. Unfortunately the record does not reveal what occurred at the interview between appellant's attorney and the examiner. We think it proper to take judicial notice of the fact that such interviews are common and usually are conducted in the spirit of a free and open discussion as to the merits of the invention, the pertinency of the prior art and the allowability of claims. We feel certain that the interview referred to in the amendment of February 10, 1954, in the original application must have been of this type and that appellant's attorneys must as a result of the interview have been very confident of the competency of the examiner to have permitted him to use his "discretion" in deleting claim 12 and substituting claim 15 therefor. We think this reliance on the examiner's discretion was in good faith and without any deceptive intention. We are, therefore, unable to find in this entire proceeding anything which constitutes any evidence of a "de-

ceptive intention" in the error which resulted in the cancellation of claim 12.

The numerous cases on reissues, cited in the brief for the Commissioner in support of the position of the board, are cases either decided under prior reissue statutes or they are cases in which it was found that the cancellation or amendment of a claim in the original patent was done deliberately and under such conditions that no "error" was present.

The substitution, as here, of a claim proper in form for a claim which is formally defective but not rejected by the examiner for this or any other reason is, in our opinion, clearly distinguishable from the typical fact situation of these prior cases. The deliberate cancellation of a claim of an original application in order to secure a patent cannot ordinarily be said to be an "error" and will in most cases prevent the applicant from obtaining the cancelled claim by reissue. The extent to which it may also prevent him from obtaining other claims differing in form or substance from that cancelled necessarily depends upon the facts in each case and particularly on the reasons for the cancellation.

In the instant case, the reasons for the deletion of claim 12 of the original application do not appear of record, and we may not properly speculate as to what they may have been and base our decision on the results of such speculation. The appealed claims differ materially from cancelled claim 12 and there is nothing of record on which to base a holding that the cancellation of claim 12 was in any sense an admission that the reissue claims on appeal were not in fact patentable to appellant at the time claim 12 was deleted.

The circumstances shown by the record are not sufficient to establish that the deletion of claim 12 was such an action as would forfeit appellant's right, by reissue, to obtain the appealed claims.

We hold specifically that the substitution of claim 15 for claim 12 in the original application was, under the circumstances of this case, an "error without deceptive intention." We therefore reverse the appealed decision.

Reversed.