**Application of William O. WESSELER.**

**Patent Appeal No. 7614.**

United States Court of Customs and Patent Appeals.

Oct. 20, 1966.

**840**

Robert W. Beach, Seattle, Wash. (George R. Jones, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This appeal presents two issues: first, whether appellant-patentee, in claiming less than he had a right to claim in his patent,[1] is entitled under 35 U.S.C. § 251 to a reissue of that patent containing appealed claims 6, 7, 13, 14 and 15 which are asserted to be properly commensurate with the scope of his invention; second, whether he has inserted new matter in appealed claims 4 and 5 in his application for reissue[2] contrary to section 251.

Claims 6, 7, 13, 14 and 15 stand rejected on the ground that they are improperly presented in a reissue application in that appellant did not show that the failure to include such claims in his patent constitutes "error" under section 251 which entitles him to secure the claims in a reissue patent. Appellant and the solicitor agree, and the Board of Appeals so found, that the subject matter defined in these claims is useful, novel and unobvious. Claims 4 and 5 stand rejected on the ground that they contain new matter. The two rejections are independent and will be treated separately.

### The Invention

The invention, a cable hanger, is for supporting cables, pipes, conductors, ducts and the like. The specification states the objects of the invention as follows:

Accordingly, a principal object of this invention is to provide a hanger capable of withstanding heavy shock loading, and which is sufficiently rigid but yieldable to distribute the shock throughout the hanger.

Another object is to provide a hanger which has greater versatility in accommodating different sizes and arrangements of cables and the like and which will eliminate the need for large and costly inventories.

Still other objects are to provide a hanger which will effect a reduction in weight without a sacrifice of strength; to provide a hanger capable of expediting and reducing installation costs by permitting use of commercially available banding tools; and to provide a hanger which is less expensive to construct, install and maintain.

The specification discloses three hanger assemblies suitable for supporting a single cable, a single row of cables, or multiple rows of cables respectively. The embodiment referred to as the hanger assembly for a single row of cables provides the most suitable base for explaining appellant's invention. We will refer to Figs. 3, 4 and 7 of the reissue specification, concerning which there is no objection.

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. No. 2,939,664, issued June 7, 1960.

2. Serial No. 155,891, filed Nov. 27, 1961, entitled "Cable Hanger."

FIG. 3.

FIG. 4.

FIG. 7.

In Fig. 7, there is shown a flat sheet metal blank 24 having a base portion 25, flange portions 26, lips 35, and legs 28. The blank 24, after forming, constitutes the saddle 22 shown in Figs. 3 and 4. In these latter figures, pipes 32 are shown abutting base portion 25 and constrained by a band 33 which loops about the base portion and the pipes with fastening means shown at 36. The hanger assembly is fastened to the structure 31 by standards 30. According to the specification, "Normally, two lugs are needed for wide cable groupings."

In the embodiment showing multiple rows of cable, multiple hanger assemblies are deployed in stacked vertical arrangement with different forms of standards. In the single cable embodiment, only one lug and flange portion is shown.

The specification points out that the objects of the invention are generally achieved

\* \* \* by the provision of a hanger that employs a flexible clamping member, preferably of band material, capable of being looped completely around both the object to be supported, such as a single cable or group of cables, and the support. The looped band can be simply and expeditiously tensioned by a commercially available banding tool and the ends of the band secured in such condition by a suitable buckle.

It is clear that important objects of the invention are the elimination of a large inventory of parts and the provision of a hanger which will reduce vibrations due to shocks.

### Prosecution History

The original application as filed contained ten claims. Eventually amended claims 25, 26 and 27 were allowed and became claims 1, 2 and 3 of the issued patent. This application was prosecuted by attorneys for the Department of Navy, since appellant, for reasons not of record, appears to have licensed the invention set forth in the application to the U. S. Government and had given these attorneys the "irrevocable right to prosecute this application."

According to appellant, shortly after he received his patent "he had misgivings about the scope of protection afforded by it and consulted outside counsel." After consulting with present counsel, appellant decided to file the reissue application. This application was filed within two years from the date of the issuance of the patent. The accompanying oath states, in part, as follows:

\* \* \* reissue of Patent 2,939,664 on the basis of this application should be granted because I consider said patent to be defective through error without any deceptive intention on my part by claiming less than I had a right to claim in the patent, the said subject matter being embodied in claims 4 to 9, inclusive, of the present application.

Said defect I believe occurred because I am not admitted to practice before the United States Patent Office and am not familiar with patent matters and relied on my attorneys for the preparation and prosecution of patent application Serial No. 531,208. While I was kept reasonably informed of the progress in the prosecution of said patent application I was unable to evaluate whether the claims, as presented during the prosecution of the patent application and as finally allowed, afforded adequate and proper protection for my invention.

The reissue application was filed with 9 claims. By amendment other claims were added until it eventually contained a total of 18 claims all of which were finally rejected by the examiner. Several of the claims were rejected on multiple grounds. On appeal, the board rendered a decision and thereafter took action on two petitions for rehearing. The ultimate disposition of the appeal by the board was to reverse certain rejections, sustain others and enter a new ground of rejection. We will set forth briefly the grounds of rejection and the board's disposition of the appealed claims in its first opinion.[3]

### Claims 4 and 5

These claims were copied from a patent to Richardson et al.[4] for purposes of provoking an interference. The examiner rejected these claims on the grounds of "new matter" and "as not supported by applicant's disclosure." The board sustained the examiner's rejection.

---

3. Claims 1–3, 8–10, and 16–18 were also considered by the board. Appellant argues here only as to claims 4–7, and 13–15. No further mention need be made as to the claims concerning which no argument has been presented except as necessary to explain the proceedings below.

4. U.S. Patent No. 2,964,274 filed Dec. 30, 1958, issued Dec. 13, 1960.

*Claims 6 and 7*

These claims are asserted to be similar to claims in Richardson. They were rejected by the examiner as containing new matter. As a new ground of rejection, the examiner's answer stated that the claimed subject matter was obvious under section 103. These grounds of rejection were reversed by the board. However, the board, pursuant to Rule 196(b), made a new ground of rejection under section 251, stating no "error" had been shown as justification for presenting these claims in the reissue application.

*Claims 13, 14 and 15*

These claims were rejected by the examiner on the grounds that the supporting oath was defective; that they incorporated new matter; and, as a new ground of rejection stated in the examiner's answer, that the claimed subject matter was obvious under section 103. The examiner withdrew the first two grounds of rejection and the board reversed the examiner's rejection based on obviousness. The board, however, entered a new ground of rejection under section 251, stating no "error" had been shown.

The board, in acting on appellant's first petition for rehearing, set forth further reasoning in support of its action and adhered to the above disposition of the appealed claims. However, certain other non-appealed claims were found to lack novelty over a prior art reference. As the board in its first decision had reversed the examiner's rejection of these claims [5] under section 103, it was of the opinion that a new decision had been rendered.

Appellant, proceeding under Rule 197(b), submitted a second petition for rehearing. The board set forth further reasons in support of its position and

affirmed its previous disposition of the appealed claims. Within 30 days after the board took action on the second petition, appellant filed a timely appeal to this court.

Thus, in summary, claims 6, 7, 13, 14 and 15 were rejected by the board under section 251 in its first opinion and the reason—in support thereof is set forth and elaborated on in all three of its opinions. Claims 4 and 5 were rejected by the examiner as containing new matter and this rejection was affirmed by the board for the reasons set forth in its first opinion. We shall now consider these two rejections and the board's reasoning with respect thereto.

*Opinion*

We shall first consider the issue presented as to claims 6, 7, 13, 14 and 15. The only rejection remaining as to these claims is that made by the board as a new ground of rejection. The question here is whether appellant is claiming subject matter omitted from his patent claims through "error" within the meaning of section 251.

The board, in reaching its conclusion that appellant was not entitled to relief under section 251, employed several lines of reasoning in succession. In its first opinion, the board was of the view that appellant had introduced specific limitations "for the purpose of getting a patent" and was "not entitled to a reissue to obtain any claim which omits the specific limitations introduced as a *matter of judgment* in order to obtain a patent." [Emphasis added.] The board relied on In re Byers, 230 F.2d 451, 43 CCPA 803, and Shepard v. Carrigan, 116 U.S. 593, 6 S.Ct. 493, 29 L.Ed. 723 (1886), quoting from the latter, 116 U.S. at 597, 6 S.Ct. at 495, the following:

\* \* \* Where an applicant for a patent to cover a new combination is

---

5. Claims 1 and 2 of the reissue application are identical to claims 1 and 2 of appellant's patent. Appellant takes no issue here with the board's action respecting these claims stating "the Board is to be commended in reconsidering the patentability of \* \* \* [these claims] on its own motion" and "even though these claims were not in issue on appellant's request for reconsideration."

compelled by the rejection of his application by the patent-office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. * * *

The board also stated:

* * * appellant *through his counsel, and as a deliberate matter of judgment for the purpose of getting a patent, abandoned* claiming his invention except insofar as it included the specific mounting means identified and set out in each patent claim. [Emphasis added.]

We shall set forth at this point briefly what was defined in the claims presented in the patent application. All of the claims defined in various terminology a hanger assembly having two elements, a channel or saddle and a band. Some claims emphasized the structure of the channel which reduced vibrations while other claims emphasized other aspects of the channel structure and the band which reduced the required inventory of parts. The finally allowed claims defined the hanger assembly in various terminology. Claim 25, for example, defines a combination comprising a flexible band and channel having base and flange portions and an offset ear.

The board in its first opinion was of the view that any reissue claim must include a limitation as to the specific mounting means identified as an "offset ear." It also stated appellant had "abandoned" claiming his invention except insofar as each claim contained the above limitation.

The board's second opinion, rendered on the first petition for rehearing, added that all of the appealed claims contained added limitations not present in the cancelled claims and that its rejection was not based on interpreting the claims as being of the "same scope." The board stated:

* * * Nowhere have we held that any of the claims that we have reject-ed on the ground of lack of error are of the same scope as claims cancelled during prosecution in the original application. This was not our ground of rejection, and we recognize that all of the claims before us contain terms of recitation that are added limitations not present in the cancelled claims. If this had been our ground of rejection, the decisions to which appellant refers as pointing out the law would be of pertinence. Such, however, was not our ground of rejection.

It then restated the issue in the following terms:

Where an application discloses two distinct subjects, each possibly patentable, and because (1) of the Examiner's *rejection of one* thereof and (2) the fact that he indicates that he will *allow the second,* an applicant cancels all claims defining the first in order to obtain a patent covering the second, may he by reissue *recapture that which he abandoned* by cancellation and patent issue for the second distinct subject only?

The "distinct subjects" referred to by the board were derived from the objects of the invention, quoted supra, and were identified in its opinion as the portion of *structure reducing vibrations* and the portion of structure eliminating inventories of parts. The board thus switched from its theory that any reissue claims had to recite the portion of the structure for reducing vibrations to a theory of "abandonment of distinct subject." It cited, as additional authority, Riley v. Broadway-Hale Stores, Inc., 114 F.Supp. 884 (S.D.Cal.1953).

In its third opinion, in acting on the second petition for rehearing, the board explained that appellant had made a "mistake in judgment" by "*acquiescence* in a rejection made by the Examiner and thus *abandoning* subject matter of canceled claims." [Emphasis added.] The board also stated:

* * * In our opinion the law is clear, namely once an applicant has aban-

doned subject matter and has taken out a patent on a different subject matter, he may not by reissue recapture that which he has abandoned, whether he attempts to recapture cancelled and thus abandoned broad claims to the *same invention* for which the patent issued, or *as here* attempts to recapture *a second invention* abandoned by cancelling *all* claims thereto. [Emphasis added.]

The board relied on the *Byers, Shepard* and *Riley* cases and added Miller v. Brass Co., 104 U.S. 350, 26 L.Ed. 783 (1881) in its third opinion.[6] Whether the board considered "distinct subject" to mean a second invention in its second opinion or whether the board switched to a "two invention theory in its third opinion is not clear from the record.

We find the board's reliance on the above decisions unwarranted and its reasoning unsupported by the *facts* of record. Before considering whether appellant is entitled to relief under section 251, we shall set forth the facts of record concerning the prosecution of the patent application.

The cancellation of claims referred to by the board occurred after the rejection of all then pending claims had been made final. All claims at that time stood rejected as being "vague and indefinite" and claims 11, 12, 20 and 21 were also rejected as "unpatentable over" a patent to Simmonds. The Simmonds patent is not of record in the present appeal. There is of record here a letter by the examiner, dated July 30, 1959, discussing claims 5, 11, 20 and 21 relative to Simmonds wherein it is stated that Simmonds "discloses a fully equivalent hang-

er." The letter concludes that the "rejection is made FINAL."

It is the subsequent cancellation of these claims that the board here relies on as establishing that appellant either made a "mistake in judgment" or "abandoned" a portion of his invention, neither of which the board considers to be "error" under section 251. Appellant's attorney [7] had a personal interview with the primary examiner concerning the above rejections. The application was then amended in several particulars which included adding claims 25, 26 and 27 (which became patent claims 1, 2 and 3) and cancelling "all claims presently active." In the remarks accompanying the amendment, gratitude is expressed to the primary examiner, in the absence of the examiner, for granting an interview and for his "constructive criticisms" and "suggestions." The statement proceeds:

In an effort to expedite prosecution of this case and bring it to a close, this amendment after final rejection is presented for the Examiner's further consideration. *Applicant has herein attempted to follow completely the procedures and suggestions presented by the Primary Examiner insofar as they were understood.* Accordingly, three new claims have been herein presented. Claim 25 is believed to be generic, and Claims 26 and 27 are believed to be species contemplated by said generic claim. [Emphasis added.]

According to the board, the italicized portion of the above statement

\* \* \* points out specifically that the Examiner would consider allowance only with such specific limitations [the

6. Appellant argues the board's position is inconsistent with the following decisions:
  Ex parte Lumbard, 47 USPQ 523 (Bd. App.1940);
  Ex parte Sullivan, 57 USPQ 151 (Bd. App.1943);
  Ex parte Allwein, 99 USPQ 177 (Bd. App.1953);
  Ex parte Feissel, 131 USPQ 252 (Bd. App.1958).

7. The interview was conducted by an attorney other than the one whose signature appears on all papers of record in the prosecution of the patent application. Appellant argues that as a practical matter the parties best qualified to evaluate the claimed subject matter did not interview the case. The interviewing attorney then reported back to the attorney prosecuting the case who then prepared the amendment.

channel with the laterally offset ear] pertaining to mounting. * * *

The remarks filed with the amendment entered after final rejection also state:

When combined with their respective interacting elements, the aforementioned claimed structures ostensibly effect new combinations which produce the new and highly useful result of *simplifying the mounting of pipes,* cables, etc. on appropriate support structures *and, in addition, reduces the number of types of parts required to be carried in the storage inventory* which, in turn, results in economies not occurring when using the devices of the cited prior art. [Emphasis added.]

The facts concerning the prosecution of the application on which appellant's patent issued may be summarized. The claims presented in the patent application, as here, defined the cable hanger assembly in various terminology. There, as here, the emphasized objects of the invention were to reduce vibrations and eliminate a large inventory of parts. On final rejection the then pending claims were rejected on two grounds, i. e., the claims were "vague and indefinite" and a prior art patent defined a "fully equivalent" hanger. In terms of the 1952 Patent Act, we assume that the examiner's position was that the claims failed to point out and distinctly claim the invention, 35 U.S.C. § 112, and that the subject matter claimed was obvious in view of the prior art, 35 U.S.C. § 103. After the above referred to interview with the primary examiner, the rejected claims were cancelled and three new claims were presented. These new claims were subsequently allowed. From the remarks accompanying the claims it appears that they embody certain suggestions of the primary examiner made during the interview "insofar as they were understood" and which are not of record. The attorney stated that these claims represented a generic and two species claims and that they embodied two "new and highly useful" results, including the "distinct subject" referred to by the board, the elimination of parts.

On the above facts we do not agree with the conclusion of the board that the remarks accompanying the three claims show "specifically that the Examiner would consider allowance only with such specific limitations pertaining to mounting." [8] Insofar as the inclusion of a specific limitation is concerned, the remarks establish that the attorney considered he was obtaining protection for the two "highly useful results" in presenting a generic and two species claims. Insofar as the *act* of cancelling claims is concerned the record does not show whether this was an admission that those claims were unpatentable over the prior art or whether they were cancelled and the amended claims were submitted to cure the "vague and indefinite" rejection.[9]

Before examining the board's reasoning as to why appellant had failed to show "error" under section 251, the situation as to *appealed claims* may be summarized. The cancelled claims, in the application which resulted in appellant's patent, claimed subject matter which the examiner asserted was obvious in view of the prior art but they also had been rejected as being vague and indefinite. No appeal was taken and the new claims were allowed. According to the board, the claims presented here define patentable subject matter and are narrower in scope than the cancelled claims in the

---

8. We do not think that the statement by the examiner that Simmonds discloses a "fully equivalent" hanger together with appellant's statement that he "attempted to follow completely the procedures and suggestions presented by the Primary Examiner insofar as they were understood" establishes the factual conclusion found by the board. We will take judicial notice that patent attorneys are prone to thank primary examiners for their suggestions and criticisms but we fail to find in such statements *proof of the fact urged by the board.*

9. In either case, the unappealed final rejection of the examiner would not be considered binding. In re Hitchings, 342 F. 2d 80, 52 CCPA 1141; MPEP, Section 706.03(w).

application which resulted in appellant's patent but are broader than the patent claims.

■ We will now consider whether appellant has shown "error" within the meaning of section 251. The first line of reasoning employed by the board is that the inclusion of the specific limitation in the patent claims prohibits appellant from obtaining any reissue claim omitting that limitation. The reissue statute, section 251, authorizes the Commissioner, upon the surrender of the patent and the payment of the fee required by law, to "reissue the patent for the *invention disclosed* in the original patent." [Emphasis added.] It further provides that "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." The board concedes the invention as claimed here was disclosed in the original patent and that the reissue application was timely filed to permit appellant to seek broader claims. Appellant thus had the right by reissue to enlarge the *scope* of the patent claims in accordance with the *invention disclosed* in the original patent subject to compliance with the remaining provisions of section 251, e. g., the appealed claims must define patentable subject matter, conceded here.

■ Under the circumstances, we find appellant claimed in his patent "less than he had a right to claim," and as such is entitled to utilize the remedial provisions of section 251 to claim his invention in a reissue of his patent by omitting limitations in the patent claims if he can show that the limitations which resulted in his claiming less than he had a right to claim were included "through error." If such error can be shown and subject to the other qualifications in section 251, such a limitation in the patent claims may be omitted in the reissue claims.

■ Next, we will consider the board's line of reasoning based on abandonment. The board found that appellant, as a matter of "judgment," decided to "abandon" protection to the subject matter here claimed. Whatever the genesis of the abandonment theory advanced by the board, it is clear from the *facts* of record that appellant fully intended to gain patent protection commensurate in scope with the *invention disclosed* in his application. The remarks accompanying the finally allowed claims show that appellant did not intend to abandon that portion of his invention dealing with the elimination of a large inventory of parts. In each of the patent claims the following statement appears:

a flexible band looped completely around both the base portion of said channel between the flange portions thereof and the aforesaid elongated pipes and cables being supported * * *

We think the record supports the conclusion that appellant intended and attempted to gain protection for what the board termed the "distinct subject," derived from the objects of the invention.

■ The fundamental error in the reasoning in the board's opinion is the failure to approach the issue by considering the *facts* of record *in light of the applicable reissue provisions*. First, we find that the invention disclosed in the patent is a hanger assembly. It is this disclosure and not the claims of the patent which determines the issue. In re Handel, 312 F.2d 943, 50 CCPA 918. In this regard, the *Handel* case contains much of value. There it is stated, 312 F.2d at 948, 50 CCPA at 924:

We are constrained to agree with appellant that if the board's view were to prevail, the reissue statute would be of very little practical effect, for, by elementary principles of claim interpretation, whenever an element or other limitation is added to or taken from a claim it becomes a claim to a different invention. *Yet the whole purpose of the statute, so far as claims are concerned, is to permit limitations to be added to claims that are too*

*broad or to be taken from claims that are too narrow.* That is what the statute means in referring to "claiming more or less than he had a right to claim." [Emphasis added.]

In *Handel* the argument was made by the solicitor that the applicant had "showed a clear intent not to secure the invention directed to the claimed combination by canceling claims directed thereto in the patented application." The board found "no clear evidence of appellant's invention to therein claim the subject matter of the herein appealed claims." The opinion in *Handel* states, 312 F.2d at 949, 50 CCPA at 925:

> As for the board's holding on intent, we find it to be contrary to the clear indication of the specification of the original patent, which the board failed to take into consideration, particularly the statement of objects quoted early in this opinion. They clearly point to the subject matter of the appealed claims as part of appellant's invention, especially when read with the detailed description of the machine and its mode of operation. * * *

Here, as in *Handel*, the facts show that appellant fully intended and attempted to claim the invention disclosed in the original patent.

Second, it is conceded that the patent is "partly inoperative" by reason of appellant "claiming * * * less than he had a right to claim in the patent" and that the reissue application is timely.

■ Third, did this occur "through error without any deceptive intention?" We recently reviewed, in In re Willingham, 282 F.2d 353, 48 CCPA 727, the requirement of the reissue provisions that error be shown. In that case the applicant submitted a new claim for an unrejected claim. Therein the argument was advanced that the applicant had acted "deliberately" and "intentionally" during the prosecution of the patent application as justification for refusing a broadened claim in a reissue application. In reject-

ing this argument, we relied on the fact that the reissue provisions are "remedial in nature." They are "based on fundamental principles of equity and fairness and should be so applied to the facts in any given case that justice will be done both to the patentee and to the public." 282 F.2d at 354, 48 CCPA at 730. See Grant v. Raymond, 6 Pet. 217, 8 L.Ed. 376 (1832); Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658 (1891); cited and quoted in *Willingham*, the quoted portions being fully applicable here.

More recently, in In re Schmidt, 293 F.2d 274, 48 CCPA 1140, we considered the meaning of the term "error" in 35 U.S.C. 116, providing remedies for the misjoinder of inventors. Therein we held that a mistake in belief, absent evidence of a deceptive intention, was an "error" which could be corrected by the remedial provisions of section 116. The argument was advanced in *Schmidt* that the phrase "error without any deceptive intention," appearing in near identical terms in both sections 116 and 251, must mean "error through inadvertence, accident or mistake" as it appears in the old reissue statute, 35 U.S.C. § 64, Sec. 4916 R.S. as certain dictum to this effect appears in In re Byers, supra. The argument was rejected in view of the fact that Congress had not defined "error" in that manner in section 116.

The board relied on the decision in *Byers* as being applicable to the facts here. The opinion in *Byers* states that it did *not* have the facts of the prosecution of the patent application before it but that it accepted the unchallenged statement of the board that the claim had been "deliberately" amended "to secure the patent." Here we have the facts of record and we do not have the situation referred to in *Byers* other than in the literal sense that every paper formally submitted is generally done "deliberately" and with the design of advancing the prosecution so as to secure a patent. As discussed infra, that is not what is meant by the term "deliberate."

The result in *Byers* was reached by resorting to decisions decided under previous reissue statutes. The court reasoned, 230 F.2d at 454, 43 CCPA at 805, that:

The issue to be determined here is whether the failure to obtain, in the patent sought to be reissued, claims corresponding to those involved in the present appeal was due to "error" within the meaning of the sentence just quoted. The use of the word "error" in that sentence instead of the words "inadvertence, accident or mistake," which appeared in the corresponding section, 35 U.S.C. § 64, Section 4916 R.S., of the patent statutes prior to the recodification of 1952, does not involve a substantive change, and the same type of error is necessary to justify a reissue after the enactment of the Patent Act of 1952 as before. * * *

■ The court did not cite any authority for the above proposition. It ignored the *fact* that the new reissue statute broadened the term "error" by not limiting it to "error" that had arisen through "inadvertence, accident or mistake." We think the term "error," arising as it does in a remedial provision designed to advance both the rights of the public and the inventor, is to be interpreted as Congress has stated it, "error without any deceptive intention," and in light of Supreme Court decisions favoring the liberal construction of reissue statutes in order to secure to inventors protection for what they have actually invented.

The board also relied on Shepard v. Carrigan, supra, a suit for patent infringement, and the statement quoted therefrom. Apparently the board felt it would be contrary to the quoted statement, supra, to allow appellant to obtain reissue claims emphasizing structure concerning the elimination of inventories of parts. An examination of the opinion in *Shepard* discloses that the element therein referred to was added to the claims to avoid the prior art. Without

the inclusion of that element there was no right to a patent. The opinion states, immediately preceding the statement relied on by the board, as follows, 116 U.S. at 597, 6 S.Ct. at 495:

This fact [cloth without fluting was old in the art] and the file-wrapper and contents of which we have stated the substance make it clear that the claim and specification of the Macdonald patent must be construed to include, as their language requires, a fluted or plaited band or border as one of the essential elements of the invention. Without this element the patent would not have been issued. The patent-office decided * * * that without it the invention had been anticipated. * * *

Here, however, there is no objection to the appealed claims based on the prior art. We do not think the statement in *Shepard*, arising from the facts therein stated, is applicable here. *Shepard* may be support for the rule that one who deliberately adds a limitation to avoid the prior art cannot omit that limitation in reissue claims so as to encroach upon the prior art, but that is not the situation here as the board's opinions clearly point out.

The board laso relied on Miller v. Brass, supra, a suit for infringement of a reissued patent. The inapplicability of that case is clear. There the inventor had claimed in reissue an invention not *disclosed* in the original patent. The court stated, 104 U.S. at 351:

* * * the invention specified in the second claim of the reissued patent (which is the one in question here) is not the same invention which was described and claimed in the original patent. The latter was for a double dome without a chimney, the peculiarity of the supposed invention being the use of the double dome as a means of dispensing with the chimney. The reissue is for a single dome with a chimney. It is not only obviously a different thing, but it is the very

thing which the patentee professed to avoid and dispense with.

Concerning the inadvertence and mistake alleged as grounds for reissue, the court stated, 104 U.S. at 351–52:

But there is another grave objection to the validity of the reissued patent in this case. It is manifest on the face of the patent, when compared with the original, that the suggestion of inadvertence and mistake in the specification was a mere pretence; or if not a pretence, the mistake was so obvious as to be instantly discernible on opening the letters-patent, and the right to have it corrected was abandoned and lost by unreasonable delay. The only mistake suggested is, that the claim was not as broad as it might have been. This mistake, if it was a mistake, was apparent upon the first inspection of the patent, and if any correction was desired, it should have been applied for immediately.

These afterthoughts, developed by the subsequent course of improvement, and intended, by an expansion of claims, to sweep into one net all the appliances necessary to monopolize a profitable manufacture, are obnoxious to grave animadversion. The pretence in this case that there was an inadvertence and oversight which had escaped the notice of the patentee for fifteen years is too bald for human credence.

There does not appear to be one point of meaningful similarity between the appellant's actions here and the situation presented in *Miller*. See Ex parte Lumbard, supra, fn. 6.

■■■ The board also cited Riley v. Broadway-Hale Stores, Inc., supra,[10] a suit for patent infringement. The inapplicability of this case is demonstrated by the following statement from the court's opinion, 114 F.Supp. at 890:

\* \* \* the reissue patent in fact covers an invention not disclosed in the original patent \* \* \*

■■■ We find as a factual matter that a mistake occurred in the prosecution of the patent application. That mistake was in not then presenting the appealed claims with the result that appellant's patent claimed less than he had the right to claim. The record establishes that appellant erroneously considered he was securing protection commensurate with the invention disclosed in the original application. There is no evidence that appellant intentionally omitted or abandoned the claimed subject matter. We find that while appellant *acted* "deliberately" he did so in error. This error, in view of the facts of record, was an "error without any deceptive intention" which entitles appellant to secure a reissue of his patent under the provisions of section 251. The board's decision as to claims 6, 7, 13, 14 and 15 is therefore reversed.[11]

10. The solicitor states that issue is "the propriety of the Board's applying, under the circumstances of the case, the doctrine which was well summarized by United States Court of Appeals for the Ninth Circuit in Riley v. Broadway-Hale Stores, Inc., 217 F.2d 530 [affirming the above decision] as follows:

The courts have uniformly held that a reissue patent is void if the matter claimed in the reissue was *intentionally* omitted or abandoned by the patentee during the course of his application for the original patent, that is to say, in such situation no error through inadvertence, accident, or mistakes can be said to exist. [Emphasis added.]

The facts here do not support the solicitor's position that the subject matter

claimed in the appealed claims was "intentionally omitted or abandoned."

11. For completeness, we would add that we do not consider an issue to be here raised by the board's remarks in its third opinion as to "acquiescence" and "two inventions." We find appellant seeks protection for the invention *disclosed in the original patent.* In re Handel, supra. We also find inapplicable here the decisions involving reissue claims to non-elected subject matter after requirement for restriction. See, e. g., In re Cornell, 150 F.2d 702, 32 CCPA 1251; In re Smyser, 135 F.2d 747, 30 CCPA 1093.

Insofar as the board expressed in its second opinion that appellant claimed a "distinct subject," if the remedial pro-

### Claims 4 and 5

Claims 4 and 5 are the same as claim 6 except that the channel designated as a "hollow member" in claim 6 is designated as a "tubular member" in claims 4 and 5. According to appellant's brief:

\* \* \* We are here concerned solely with the meaning of the word "tubular."

The issue is, if the word "tubular" is sufficiently broad to embrace within its ambit a member of U-shaped cross section and a member of square cross section, the decision of the Patent Office Board of Appeals must be reversed. \* \* \*

Appellant cites the following definition for "channel" from Webster's Third International Dictionary, "tubular closed passage: conduit, pipe, duct." Appellant argues the use of the term "channel" in the original specification is a disclosure of "tubular." The solicitor argues as follows:

The word "tubular" is defined in Webster's Third New International Dictionary, Unabridged, G. & C. Merriam Company, Springfield, Massachusetts, 1965, as "having the form of a tube." The first and broadest of the many definitions of "tube" in that dictionary is "a hollow elongated usu. cylindrical body that is used esp. to convey fluids and is mechanically nearly or precisely the same as a pipe but in use is arbitrarily associated with particular items or devices." By definition, therefore, and also in ordinary usage a "tubular" member is closed in cross-section, and open structures, such as those which are U-shaped in cross-section, are excluded.

We think the breadth of the term channel does not disclose the specific meaning attributable to the term tubular. We agree with the solicitor that in ordinary usage a "tubular" member is closed in cross-section. Accordingly, we do not find the disclosure in the specification of the member as a "channel" as support for claiming a "tubular member." The decision of the board is affirmed as to claims 4 and 5.

The decision of the board is therefore modified.

**Modified.**

visions of the reissue statute had been applied at this point to do equity, it is stated therein that "several reissued patents for *distinct and separate parts* of the thing patented" may issue. The solicitor's brief, in urging that appellant cannot claim in reissue proceedings that which is "separate and distinct," states a position which is contrary to section 251.