**ST. REGIS PAPER COMPANY, Plaintiff,**

v.

**TEE–PAC, INC., Defendant.**

**TEE–PAC, INC., Plaintiff,**

v.

**ST. REGIS PAPER COMPANY, Defendant.**

**Civ. A. Nos. C 71–446, C 71–1094.**

United States District Court,
N. D. Ohio, E. D.

Dec. 22, 1972.

As Amended Jan. 8, 1973.

Bruce B. Krost, Charles Rust, Cleveland, Ohio, Clyde H. Haynes, New York City, for St. Regis.

Victor DeMarco, Cleveland, Ohio, James W. Clement, Ernest Cheslow, Chicago, Ill., Charles S. Lopeman, Columbus, Ohio, for Tee-Pac.

BATTISTI, Chief Judge.

### MEMORANDUM OPINION AND ORDER

This action involved certain business activities of plaintiff, St. Regis Paper Company (hereinafter St. Regis), and a meat packaging patent owned by defendant, Tee-Pac, Inc. (hereinafter Tee-Pac). Defendant filed an infringement suit in the Southern District of Ohio, which was pending when plaintiff commenced this action. The infringement suit alleged active inductment of direct and contributory infringement of Claims 5 and 7 of Reissue Patent No. 24,992.

The complaint herein seeks a declaratory judgment holding Reissue Patent

No. 24,992 invalid,[1] and also treble damages for an alleged violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. By agreement of the parties, the infringement suit was transferred to this Court and was consolidated with this action pursuant to Fed.R.Civ.P. 42(a).

St. Regis has filed four separate, voluminous motions for partial summary judgment on the issue of patent validity. Included with these motions were copies of the patent as originally issued, the reissue version, and several excerpts from trade journals disclosing the state of the art prior to the original issuance. Defendant responded with an equal volume of material, including affidavits from experts in the field. After careful examination of these pleadings, affidavits, and trade journal excerpts, it is concluded that undisputed facts are disclosed which render Claims 5 and 7 of Reissue Patent No. 24,992 invalid as a matter of law.[2] Although plaintiff raises numerous legal issues on the question of validity, only those which relate to the undisputed facts will be discussed in this opinion.

The patented process involved herein is designed to preserve the bright red color of freshly-cut meat. It involves three uncomplicated steps:

1. Wrapping the meat in a plastic wrap of low oxygen permeability[3] within 15–30 minutes of comminution;

2. Maintaining the chilled meat beyond the period in which unwrapped meat loses its attractive color; and,

3. Unwrapping the meat and re-exposing it to the oxygen in the atmosphere.

Wrapping the meat in this way reduces the rate at which the meat will undergo undesirable changes in color. These changes are a result of the characteristic reaction between oxygen in the air and the hemoglobin and myoglobin found in fresh meat. The oxidation reaction is conceded by all to have been well known and understood long before the date of the claimed invention. The patentee's only claim of novelty is that those skilled in the prior art had always

1. Although the complaint is not so limited, St. Regis' motions for partial summary judgment refer only to Claims 5 and 7. This would seem to be the correct approach, since the companion infringement suit involved only those claims.

There is no indication that an actual controversy exists between the parties as to the other claims of Reissue Patent No. 24,992. Accordingly, the scope of this opinion will be limited to Claims 5 and 7, as suggested by plaintiff's motions.

2. Defendant seems to contend that somehow a different test for summary judgment should be applied in the field of patents. However, it is well established in this circuit that summary judgment may be rendered in a patent case on undisputed facts, especially when the subject matter of the patent is not extremely complex. Bobertz v. General Motors Corporation, 228 F.2d 94, 99–100 (6th Cir. 1955), cert. denied, 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47 (1956).

3. The film referred to here is what is commonly known in households as "saran wrap". It is interesting to note in this regard that the defendant's counterclaim does not allege that St. Regis actually used the patented process. Rather, St. Regis is engaged in the manufacture and sale of unpatented plastic wrap which can be used in the process. Every license issued under the patent has been to a producer of the unpatented wrap instead of meat packagers and distributors.

Plaintiff has alleged that this use of the patent amounts to a violation of the Sherman Act, 15 U.S.C. §§ 1 and 2. This allegation involves several questions of fact, and cannot be decided at this time. Thus, the motions for partial summary judgment were directed only to the issue of patent validity. However, it is clear from the language of the applicable statute that the mere sale of a product which is "suitable for substantial noninfringing use", *without more*, is not sufficient to sustain a claim for contributory infringement. 35 U.S.C. § 271(c), Such sales may not be impeded by the holder of a patent, even though he can show that the seller knew of the intended use of his unpatented product. To hold otherwise would be to permit an unwarranted and unwise extension of the patent monopoly.

believed that fresh meat must be wrapped in film of high oxygen permeability to achieve its most pleasing color. Therefore, Tee-Pac argues, the patentee's process went contrary to the accepted practices by utilizing a low-permeability wrap.

## I.

The Court will first consider plaintiff's contention that the patent is invalid under 35 U.S.C. § 103, since all essential elements would have been obvious to those skilled in the prior art at the time of the claimed invention. While it is settled that "obviousness" is a question of law, it can only be found after the state of the prior art is factually determined. International Salt Co. v. Commissioner of Patents, 140 U.S. App.D.C. 378, 436 F.2d 126, 129 (1970). In spite of the fact that the patent here in question is very easy to understand, the Court would be reluctant to find the invention to have been "obvious" without first hearing expert testimony on the scope of the prior art. However, plaintiff's arguments may properly be considered under the more narrow provisions of section 102(b).[4] This section has been held to implicitly contain the obviousness test, although in a more limited way. Package Devices Inc. v. Sun Ray Drug Co., 432 F.2d 272, 275 (3rd Cir. 1970),

cert. denied, 401 U.S. 956, 91 S.Ct. 977, 28 L.Ed.2d 239 (1971).

Under section 102(b), it is unnecessary to ascertain the exact extent of the knowledge and skill of those trained in the art prior to the claimed invention. Even if most of the prior art references fail to disclose the invention, the patent is nevertheless invalid if all essential elements are disclosed in a printed publication more than one year prior to the filing date of the patent application. Invalidity may also be found if all such elements are contained in a collection of such publications. Package Devices, Inc. v. Sun Ray Drug Co., *supra;* Application of Foster, 343 F.2d 980, 988, 52 C.C.P.A. 1808 (1965), cert. denied 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307 (1966). Thus, the Court need only make a comparison between the claimed invention and the submitted publications. Of course, a Court may utilize expert testimony in making the comparison, especially in complex cases. However, there is certainly no inflexible requirement that this be done. Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227 (7th Cir. 1969), cert. denied, 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970).[5] Here we have the patent claims [6] as well as printed publications [7] in circulation more than one year prior to the filing date on the pat-

4. 35 U.S.C. § 102 states in part: "A person shall be entitled to a patent unless—

> .    .    .    .    .
>
> (b) the invention was . . . described in a printed publication in this . . . country . . . more than one year prior to the date of the application for patent in the United States."

5. In *Deep Welding,* the Court found that the case was determinable solely on the documentary evidence submitted, in spite of the fact that a complete trial had been held. The Court reversed the district court's finding of patent validity, holding that prior articles had fully disclosed the invention and thus patentability was foreclosed by section 102(b). 417 F.2d at 1239.

6. In addition to the references in the patent itself, the inventor has stated on

deposition what he claims his discovery to be. *See* Plaintiff's Brief on Motion No. 2, P. 19. Defendant's counsel indicated at the oral hearing that the real "invention" was the use of film of low oxygen permeability. Tr. 18, 20.

7. The inventor is presumed to be aware of all such printed references at the time of his claimed invention. Application of Winslow, 365 F.2d 1017, 1020, 53 C.C. P.A. 1574 (1966). While publications in general circulation are to be preferred over documents contained in private libraries or files, Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227 (7th Cir. 1969), cert. denied, 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970). defendant has not objected to the excerpts submitted by plaintiff on the grounds of obscurity.

ent application. In view of the easily understandable nature of the subject matter, the Court may decide on the basis of the documentary evidence submitted if the patent is invalid as a matter of law under the provisions of 35 U.S.C. § 102(b). Deep Welding, Inc. v. Sciaky Bros., Inc., *supra* at 1229–1230.

Considering the comparison outlined above, it is concluded that Claims 5 and 7 of Reissue Patent No. 24,992 are void. An examination of the materials submitted by both parties reveals that the inventor does not claim to have discovered the direct proportional relationship between oxygen pressure and color changes in meat.[8] The fact that color and bacterial growth rates are affected by the characteristics of the wrapping material used was also fully disclosed in the prior art.[9] Counsel for defendant has attempted to diminish the force of these articles by referring to a so-called "widely held belief" at the time of the application that only high-permeability wrap should be used in packaging. Such a belief, if true, would seem to run counter to the fact (which both parties agree was well known at the time) that the presence of oxygen discolors fresh meat. It is unnecessary, however, to speculate further on this dilemma. Assuming such a belief was common, the inventor's idea was fully described in an article published in Volume 22 of Food Industries in 1950. There it was stated at page 65:

"Even more important is the length of time the cut of beef has been exposed to air before packaging. When cut, fresh beef has a purple-red hue—the true color of the flesh. But this color rapidly changes to a bright red, due to oxygenation of myoglobin present in the meat. If the meat is wrapped directly after it is cut—before the for-

mation of oxymyoglobin—some wraps will never permit this reaction to occur. *"Others that are slightly permeable to oxygen will eventually allow this reaction to take place.* (Emphasis added)."

If this passage is read in conjunction with a 1951 DuPont publication, submitted with plaintiff's briefs, the thoroughness of the anticipation is even more evident. In the DuPont article it was stated that:

"After fresh beef is cut, it should be exposed to the air from 15 to 30 minutes before packaging . . . This allows the meat to attain the bright red color commonly associated with fresh beef.

. . . . . .

Tight, well-sealed packages . . . will maintain the color and freshness of red meats for 72 hours."

The Court realizes that utmost care must be employed when the validity of a patent is determined by summary judgment. However, considering the excerpts cited above, a more complete anticipation is difficult to imagine. Therefore, Claims 5 and 7 of Reissue Patent No. 24,992 are void.

## II.

The above holding of invalidity, however, is not limited to a finding of anticipation. A more serious question is presented by plaintiff's contention that these claims are invalidated by defendant's attempted "recapture" of subject matter which had been abandoned during the prosecution of the patent application. The parties do not dispute the fact that the moisture vapor permeability limitation found in Claim 1 of the original patent was inserted at the insistence of the Patent Office.[10] It was then

---

8. In fact, the patent specifications refer to this reaction as "well known" Reissue Patent No. 24,992, Col. 1, Line 23.

9. See, e. g., The Discussions in Food Technology, Vol. 6, Jan. 1952, pp. 8–12 and Food Industries, Vol. 22, Jan. 1950, pp. 65–9.

10. Plaintiff's allegation to this effect was admitted by the patentee, Mr. Ellies, on deposition. *See* Plaintiff's Brief on Motion No. 2, P. 22. It was also admitted by defendant's counsel at the oral hearing on the motions for summary judgment. Tr. 22–23.

omitted from Claim 5 in the reissue patent. Plaintiff argues that when a patentee acquieses in the addition of a limitation in order to secure a patent, he may not later recapture the broader claim by reissue. This argument must be weighed against the policy of the reissue statute, 35 U.S.C. § 251.[11]

The reissue statute is intended to provide a means whereby a party may correct good faith errors in a patent to secure protection commensurate with the scope of his invention. It therefore is in the nature of an equitable remedy. Application of Willingham, 282 F.2d 353, 354–355, 48 C.C.P.A. 727 (1960). As such, the statute precludes relief in cases of fraud, rather than error.

Defendant has seized upon the "deceptive intention" language of section 251, and argues that this raises an issue of fact not determinable on a motion for summary judgment. If defendant's interpretation were correct, the Court would be bound to deny plaintiff's motion on this ground. A finding of error or "deceptive intent" could properly be made only after a full trial on the merits.

Defendant's interpretation of the reissue statute, however, has been consistently rejected by Federal "Article III" Courts. In fact, prior to 1966, all courts having considered the issue agreed that when a broad claim is intentionally abandoned in order to induce the issuance of a patent, it may not later be "recaptured" through reissue.[12]

The essence of these prior holdings is that an applicant is estopped from recapturing abandoned claims, since intentional abandonment is not the type of "error" contemplated by the reissue statute. Defendant challenges the interpretation sustained by this long line of cases by citing Application of Wesseler, 367 F.2d 838, 54 C.C.P.A. 735 (1966). In *Wesseler*, the Court of Customs and Patent Appeals questioned its own decision in Application of Byers, *supra* note 12. It had been held in *Byers* that Congress did not intend to broaden the reissue statute when Title 35 was recodified in 1952 and the word "error" was substituted for the previous language "through accident, inadvertence or mistake". The *Byers* Court found prior decisions forbidding recapture to be of continued validity.

With all due respect for the Court of Customs and Patent Appeals, it would seem that an error of some magnitude was made in the *Wesseler* decision. The Court quoted the controlling language of *Byers*, and stated that no authority had been cited for the interpretation contained therein. This statement overlooks the fact that the sentence immediately following the quoted excerpt cites two cases from the Ninth Circuit Court of Appeals. In Moist Cold Refrigerator Co. v. Lou Johnson Co., 217 F.2d 39, 44 (9th Cir. 1954), cert. denied, 348 U.S. 952, 75 S.Ct. 441, 99 L.Ed. 744 (1955), that Court of Appeals stated:

There has been some discussion of the effect, if any, of the omission of the words "inadvertence, accident, or mistake" in section 251 of the Patent Act of 1952. The reviser's notes indicate that the omission of these words was not intended to change the substantive law, and it is clear that the test as to what type of error is required to war-

---

11. Section 251 provides in part:
  "Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, . . . by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall . . . reissue the patent for the invention disclosed in the original patent."

12. Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, 492, 55 S.Ct. 139, 79 L.Ed. 638 (1935); Dobson v. Lees, 137 U.S. 258, 265, 11 S.Ct. 71, 34 L.Ed. 652 (1890); Riley v. Broadway-Hale Stores, 217 F.2d 530, 532 (9th Cir. 1954); Union Switch & Signal Co. v. Louisville Frog, etc., Co., 73 F.2d 550, 552 (6th Cir. 1934); Haliczer v. United States, 356 F.2d 541, 545 (Ct.Cl. 1966); Application of Byers, 230 F.2d 451, 455–456, 43 C.C.P.A. 803 (1956). See also Florence Mayo Nuway v. Hardy, 168 F.2d 778, 784 (4th Cir. 1948).

rant reissue remains the same as before. (Footnote omitted).

This would seem to be a fair statement, since this Court has also been unable to discern any intent by Congress to change the accepted rule. Furthermore, it is difficult to imagine an "error" which would not be encompassed by any of the terms "inadvertence, accident, or mistake".[13]

Since the reissue statute is essentially the same now as when originally enacted, it would appear that the rule set forth in Union Switch & Signal Co. v. Louisville Frog, etc., Co., 73 F.2d 550 (6th Cir. 1934) is still binding in this Circuit. There the Court of Appeals stated at page 552:

> They [the applicants] fully understood the holding of the Commissioner, acquiesced in it, and through their attorney abandoned the claims and intentionally substituted those of the original patent. The mistake, if any, was in the failure of the applicants to appeal. (Citations omitted).

The same principle was recently followed by this Court in an analogous situation. See Quikey Mfg. Co. v. City Products Corp., 297 F.Supp. 422, aff'd. 409 F.2d 876 (6th Cir. 1969). There the patentee had represented to the Patent Office that a particular limitation in the claim distinguished it from the prior art. When this limitation was later deleted on reissue, the Court held the reissue to be void, "since where a claim has been limited in order to overcome the prior art, it may not afterward be broadened by a reissue. See Shepard v. Carrigan, 116 U.S. 593, 6 S.Ct. 493, 29 L.Ed. 723 (1886)."

It is difficult to distinguish the *Quikey Mfg. Co.* case from a situation in which the applicant is told by the Patent Office that a limitation is necessary to avoid the prior art, and then he proceeds to add that limitation. In either event, he has acquiesced to the Patent Office's view of the extent of the prior art, rather than challenging its position on appeal.

Sound policy reasons can be found for the existence of the long-standing rule outlined above. As previously indicated, it requires a prospective patentee to litigate immediately any attempt by the Patent Office to unreasonably limit the scope of his invention. By permitting him to first retreat, and then attempt the reacquisition of lost ground through reissue, the Court would in effect be telling applicants: "Go along with the Patent Office now, and maybe another examiner will be more lenient (or less observant) the next time around. If the broader claim is again rejected upon application for reissue, there is still ample time for appeal." Clearly, the sounder policy would be to require that the scope of the claims be defined when the issue is first raised by the Patent Office.

In two recent cases,[14] the Court of Customs and Patent Appeals has indicated its belief that the public is already adequately protected from any possible adverse effects of allowing recapture. Essentially, that Court feels that since the reissued patent would be void under the prior art for the same reasons as those causing the original disallowance, there is no reason to discourage recapture. This argument, however, ignores the fact that the disallowance was only the orig-

---

13. This interpretation was also conceded to be correct by the Court of Customs and Patent Appeals in Application of De-Jarlais, 233 F.2d 323, 327–328, 43 C.C.P.A. 900 (1956). There the Court stated at page 328:

> [W]e are of the opinion that appellant's deliberate amendment of the claims to secure their allowance will prevent him from now claiming the canceled subject matter because such a previous deliberate amendment precludes the existence of "error" or "accident, inadvertence or mistake" which is the basis for obtaining reissue claims. It should be noted that this case, like *Byers*, was decided after the 1952 Code revision.

14. Application of Richman, 409 F.2d 269, 274 (C.C.P.A.1969); Application of Wesseler, 367 F.2d 838, 849, 54 C.C.P.A. 735 (1966).

inal examiner's opinion which was never litigated. Many small businessmen who believe that the examiner was correct, and that the reissue patent is void, may nevertheless choose to pay royalties rather than face the risks and expenses of a protracted infringement suit. Thus the patentee will continue to be unjustly enriched[15] until someone decides to challenge the patent's validity. While it is true that this situation exists in general with any patent, if it can be eliminated in some cases by binding the patentee with his own admissions, no injustice would appear to result.

Adhering to the accepted rule will assure any prospective user of a patented device or process that he need not pay royalties if a previously abandoned claim has been acquired through reissue. Certainly nothing is lost by requiring the patentee to litigate the scope of his claims immediately when challenged. While the recent cases from the Court of Customs and Patent Appeals did not technically overrule the prior decisions, the "remedy" suggested therein is inadequate to protect the public at large from a proliferation of void reissue patents. Therefore, this Court respectfully declines to follow the dicta questioning the accepted rule of this Circuit.

■ The only remaining issue to be decided is whether the reissued and abandoned claims are in fact *identical*. If they are not identical, the estoppel outlined above is clearly not applicable. Application of Richman, 409 F.2d 269, 275–276 (C.C.P.A.1969).

Defendant seeks to distinguish reissue Claim 5 from abandoned Claim 12 on the basis that two changes were made, one which narrows the scope and one which broadens it. More specifically, Claim 5 would concededly be as broad as the abandoned Claim 12 were it not for the addition of the temperature at which the oxygen permeability is to be measured.

If defendant's argument were correct, the Court could not properly invalidate Claims 5 and 7 on the basis of estoppel. However, a careful examination of the claims in question will easily refute defendant's contention.

It is obvious from the materials submitted to the Court that a temperature reference is necessary in order to sufficiently define oxygen permeability.[16] The submitted materials suggest, and both parties admit, that oxygen permeability for a given wrap is a function of temperature. This means that the same wrap will have different oxygen permeability values at different temperatures. Thus the patent would be indefinite without the temperature reference. Anyone could freely use the process, without infringing, simply by measuring the oxygen permeability at a temperature which took it out of the prescribed values.

■ The patentee admittedly was aware that his patent was inoperative without a temperature reference, as can be seen from his oath in support of the reissue application. It is also obvious from the fact that the "30°C." was added to the already limited Claim 1, as well as to the broader Claim 5. The omission of the temperature reference was clearly the type of "error" contemplated by the reissue statute, and thus its addition was proper. However, since its only function was to make the patent operative, it can not be said to have limited the original Claim 12 in any way.

■ The admitted facts lead to but one conclusion. The reissued patent, in addition to making the process operable, also attempted to recapture a broader claim which had been previously aban-

---

15. It should be noted parenthetically that the Court of Appeals in this Circuit has recently held that such payments may not be recovered retroactively. See Troxel Mfg. Co. v. Schwinn Bicycle Co., 465 F.2d 1253 (6th Cir. 1972). This case also reflected the strong public policy in having patents adjudicated at the earliest possible date.

16. This fact was also brought out by defendant's counsel at the oral hearing. Tr. 22, 23.

doned. This is not a proper use of section 251 of Title 35, since one is bound by actions taken to secure a patent and may not thereafter claim "error". Quikey Mfg. Co. v. City Products Corp., 297 F.Supp. 422, 426 (N.D.Ohio 1967), aff'd., 409 F.2d 876 (6th Cir. 1969); Union Switch & Signal Co. v. Louisville Frog, etc., Co., 73 F.2d 550, 552 (6th Cir. 1934).

For the reasons outlined above, Claims 5 and 7 of Reissue Patent 24,992 are void and the Court has determined that there is no just reason to delay entering final judgment on the issue of the validity of those claims. Accordingly, St. Regis' motion for partial summary judgment, pursuant to count one of its complaint in C 71-446 and count one of its counterclaim in C 71-1094, is granted and claims 5 and 7 of Reissue Patent 24,992 are hereby declared to be void. Likewise, in view of the invalidity of the enumerated claims, judgment will also be entered against Tee-Pac in its counterclaim in C 71-446 and in its companion infringement suit, C 71-1094.

It is so ordered.