**BALLANTYNE INSTRUMENTS & ELECTRONICS, INC., Plaintiff,**

**v.**

**Chester WAGNER and Henny Penny Corporation, Defendants.**

**Civ. A. No. 2672.**

United States District Court
S. D. Ohio, W. D.

July 20, 1966.

Gerald Rapp, Stan Freedman, Smith & Schnacke, Dayton, Ohio, Sheldon W. Witcoff, Chicago, Ill., Max Wall, Washington, D. C., of counsel, for plaintiff.

James S. Hight, Wood, Herron & Evans, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT
## CONCLUSIONS OF LAW
## JUDGMENT

WEINMAN, Chief Judge.

This matter was originally before the Court upon plaintiff's motion for summary judgment. On February 14, 1964, 227 F.Supp. 394, the Court found that each claim of the patent in suit was anticipated by the method for frying chicken in deep fat as disclosed in the publication Quantity Cookery (Revised Edition, published by Little Brown and Company, Boston, Massachusetts on January 12, 1951) and that since the application for the patent was filed more than one year after said publication, the patent was invalid. On appeal to the Court of Appeals for the Sixth Circuit, that Court sustained the summary judgment as to claim 1 of the patent in suit and reversed as to claims 2 and 3. The Court of Appeals stated:

" * * * real factual issues are presented as to claims 2 and 3 concerning: a) what the *Quantity Cookery* publication *in fact* teaches one skilled in this art as to the temperatures used in the pressure cooking step therein disclosed, and b) whether the time and temperature requirements specified in these claims are *in fact* different from what the *Quantity Cookery* publication teaches."

The trial relating to claims 2 and 3 of the patent in suit was heard by the Court and the Court having observed the witnesses and considered their testimony and the evidence, which included various exhibits, together with the arguments and briefs of counsel, and being fully advised of the premises now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff, Ballantyne Instruments & Electronics, Inc., is a Delaware Corporation having its principal place of business at Omaha, Nebraska, where it manufactures and sells deep-fat pressure cooking apparatus under its trade-mark "Flavor Crisp" for the restaurant and institutional trade.

2. Defendant, Chester Wagner, resides at Eaton, Ohio and is the president of defendant, Henny Penny Corporation, an Ohio Corporation having a regular and established place of business in Eaton, Ohio, which is within this judicial district. Defendant, Henny Penny, manufactures and sells deep-fat pressure cooking apparatus under the trade-mark "Henny Penny."

3. Defendant Chester Wagner is the patentee and owner of United States Letters Patent No. 2,778,736, a process patent.

4. The patent in issue is entitled "Method of Deep Fat Cooking Foods Under Pressure" and contains three claims in which the invention is set forth as comprising a series of interrelated steps as follows:

1—establishing a bath of hot oil, heated to approximately 310°–325° F,

2—introducing the food to be cooked into the hot oil bath and allowing it to cook for a time sufficient to brown the food,

3—thereafter enclosing the same and continuing the cooking under a pressure of up to about 15 pounds per square inch for a period of time to cook the food.

5. Claim 1, which the Court of Appeals has held to be invalid, calls for "simultaneously maintaining" the food in the bath of hot oil and cooking it under a specified pressure.

6. Claim 2 differs from claim 1 in that it requires the oil temperature in the final pressure cooking step to be "about 315 to 325° F." Claim 2 also requires a final cooking period of from 5 to 7 minutes.

7. Claim 3 differs from claims 1 and 2 in requiring that the initial cooking to be for "from two to three minutes" and, like claim 2 requires that the final cooking under pressure be at a "temperature of about 315–325° F." It differs from both claims 1 and 2 in requiring that the complete cooking operation be limited in time to "approximately ten minutes."

8. The Quantity Cookery publication was published in 1951, several years before Chester Wagner filed his patent application. At page 236 of the publication, after describing the method of preparing the chicken, the following method of cooking is stated:

"5. Put at once into the bottom of a pressure cooker, two-thirds filled with hydrogenated fat at 325° F., and cook uncovered until a *very* light but even golden brown. (Depending on size of the cooker, cook four, six or eight quarters at one time.)

"6. When chicken is slightly brown put on the cover and bring the pressure up to fifteen pounds. Cook chicken at fifteen pounds pressure for seven minutes."

9. The Quantity Cookery publication is silent as to the temperature of the hot oil in the container during the final pressure cooking step.

10. The Payne patent 2,532,639 was filed on November 18, 1946 and issued on December 5, 1950. Payne discloses a deep fat pressure cooking apparatus which has both pressure relief means for maintaining the pressure within the pot at a desired value, and thermostat means for maintaining the temperature of the hot oil within the pot at a desired value. The Payne patent is directed to a deep fat pressure cooking apparatus and does not specifically teach any particular cooking method time, temperature or pressure limitations.

11. The methods claimed in claims 2 and 3 of the Wagner patent 2,778,736 are the first disclosure in the art of a method of pressure frying chicken in which the chicken is maintained at a constant heat and a uniform pressure is maintained throughout the entire cooking cycle.

12. Chicken pressure fried in accordance with the methods of claims 2 and 3 of Wagner patent 2,778,736 is substantially different in nature from that prepared in accordance with the Quantity Cookery publication in that it has a crisper exterior, has a higher percentage of internal moisture, has a deeper brown color and contains substantially less absorbed fat.

13. The invention of claims 2 and 3 of Wagner patent 2,778,736 would not have been obvious to those skilled in the art in the light of Payne patent, 2,532,-639.

14. The methods claimed in claims 2 and 3 of Wagner patent 2,778,736 are not anticipated by any patent or combination of patents in the prior art.

15. The methods claimed in claims 2 and 3 of the Wagner patent 2,778,736 are not anticipated by the prior art cited by the plaintiff. Also, these methods are not anticipated by a theoretical combination of the Quantity Cookery publication and the Payne patent 2,532,639.

16. When Chester Wagner first filed his patent application in the Patent Office, he disclosed a cooking method which included both a preliminary browning step with the container open and a final pressure cooking step with the container closed. Wagner's application claims which were not limited to this particular cooking process were rejected as unpatentable over the prior art and as not commensurate with Wagner's disclosure. In the Patent Office action of November 1, 1956, the Patent Examiner held:

"Claims 22–24 are rejected as failing to define applicant's process since they do [not] recite the initial step of partially cooking the food in hot oil for a period of 2–3 minutes before enclosing the food and continuing the cooking of the food under pressure while the food is maintained in the bath of hot oil. It is axiomatic that the claims must be commensurate in scope with the disclosure."

17. In response to the Patent Office rejection, Wagner cancelled the rejected claims and presented three new application claims which became claims 1, 2 and 3 of the issued patent. Each of these new claims include the preliminary browning step as a material limitation which was necessary to overcome the rejection and to induce the allowance of the claims. Wagner is now estopped to ignore or eliminate the preliminary browning step from patent Claims 2 and 3 since to do so would make these claims the same as the rejected claims which were cancelled and abandoned.

18. More than two years after his patent was issued Wagner filed an application to re-issue his patent by adding four new claims which were broader than the cooking method covered by Claims 1, 2 and 3 of the original patent. He attempted to obtain claims which eliminated the preliminary browning step and which merely defined the concept of closing the lid after the food was loaded into the pot so that the food would be browned and cooked in a single operation. The Patent Office action of August 3, 1959 rejected Wagner's attempt to broaden his patent on the grounds that the patent contains no basis or disclosure for the broadened concept. In response to the rejection of his re-issue application claims, Wagner abandoned his re-issue application. This further rejection by the Patent Office strengthens the estoppel against any construction of Wagner claims 2 and 3 for a cooking method which does not include his particular preliminary browning step and final pressure cooking step under the specific temperature, time and pressure limitation set forth in these claims.

19. The Court finds that plaintiff, Ballantyne Instruments & Electronics, Inc., has not used, nor actively induces any others to use, the particular cooking method defined by Wagner claims 2 and 3. Said plaintiff has always used, and has always taught others to use, its Flavor-Crisp apparatus so that the lid would be closed and the food cooked under pressure immediately after all the food is placed into the hot oil.

20. Defendants are not entitled to apply the doctrine of equivalents in order to make Wagner claims 2 and 3 cover the method used by plaintiff in its Flavor-Crisp apparatus. The preliminary browning step is a critical limitation of these claims under the doctrine of file wrapper estoppel. Defendants cannot make plaintiff's method the legal equivalent of Wagner's claimed method since recourse may not be had to the doctrine of equivalents to recapture claims which Wagner surrendered by amendment and cancellation of his original application claims.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties to this action.

2. The claims of the patent in suit are presumed to be valid and the burden of establishing invalidity is upon the party who is urging invalidity. § 282, Title 35, U.S.C.A. and Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S. Ct. 675, 81 L.Ed. 983 (1937).

3. The burden of proof upon the party asserting the invalidity of a patent is proof which is clear and satisfactory; it must be proof which will convince the Court beyond a reasonable doubt. Cutting Room Appliances Corp. v. Weatherbee Coats, Inc., 158 F.Supp. 231, 233 (D.C.N.D. Ohio 1950) affirmed, 250 F.2d 39 (6 Cir. 1957) and Mumm v. Jacob E. Decker & Sons, supra, 301 U.S. at page 171, 57 S.Ct. 675.

4. The relevant statutes to be considered in this action are § 101, § 102(b) and § 103 of Title 35, U.S.C.A. which provide as follows:

§ 101. "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

§ 102. "The person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in this country more than one year prior to the date of the application for patent in the United States * * *"

§ 103. "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

5. There are three elements requisite to validity of a patent: novelty, utility and invention. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Harvey v. Levine, 322 F.2d 481, 483 (6 Cir. 1963); Maytag Company v. Murray Corporation of America, 318 F.2d 79, 81 (6 Cir. 1963); Aluminum Company of America v. Sperry Products, Inc., 285 F.2d 911, 917 (6 Cir. 1960), cert. denied 368 U.S. 890, 82 S.Ct. 143, 7 L.Ed.2d 87 (1961); and Allied Wheel Products, Inc. v. Rude, 206 F.2d 752, 760 (6 Cir. 1953).

6. Applying the applicable law to the facts as hereinbefore found, the Court concludes that claims 2 and 3 of United States Letters patent 2,778,736 are valid.

7. The burden of proving patent infringement rests upon the party charging infringement. United States Rubber Co. v. General Tire and Rubber Co., 128 F.2d 104 (6 Cir. 1942), and Aluminum Co. of America v. Thompson Products, Inc., 122 F.2d 796 (6 Cir. 1941).

8. Where limitations on claims suggested by Patent Office and acquiesced in by patentee are adopted to avoid earlier grounds of rejection and to obtain allowance of patent, the patentee is estopped from denying limiting effect of the language in the claims as issued. Parke, Davis & Co. v. American Cyanamid Co., 207 F.2d 571 (6 Cir. 1953).

9. The claims of a patent must be read in light of the specifications, drawings and file wrapper history and may not be given a construction broader than the teachings of the patent. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940), opinion amended and petition for rehearing and the motion to remand denied, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Tillotson Manufacturing Company v. Textron, Inc., Homelite, 337 F.2d 833 (6 Cir. 1964) and Cincinnati Milling Machine Co. v. Turchan, 208 F.2d 222 (6 Cir. 1953).

10. In Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940) the Supreme Court stated:

" * * * where the patentee in the course of his application in the patent office has, by amendment cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed. * * *" [At page 218, 61 S.Ct. at page 238].

*   *   *   *   *   *

"It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected and the claims allowed cannot by construction be read to cover that which was eliminated from the patent * * * The patentee may not, by resort to the doctrine of equivalents, give to an allowed claim a scope which it might have had without the amendments, the

cancellation of which amounts to a disclaimer * * * The injurious consequences to the public and to inventors and patent applicants if patentees were thus permitted to revive cancelled or rejected claims and restore them to their patents are manifest. * * *" [At pages 220–221, 61 S. Ct. at pages 239–240].

11. What the patentee has lost by disclaimer cannot be regained by recourse to the doctrine of equivalents. Exhibit Supply Co. v. Ace Patents Corporation, 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

12. Applying the applicable law to the facts as hereinbefore found the Court concludes that claims 2 and 3 of United States Letters patent 2,778,736 have not been infringed by Ballantyne Instruments & Electronics, Inc.

### JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered, adjudged and decreed;

That claims 2 and 3 of United States Letters patent 2,778,736 are valid and

That plaintiff, Ballantyne Instruments & Electronics, Inc., has not infringed claims 2 and 3 of said Letters patent 2,778,736.