**TEE–PAK, INC., Defendant-Appellant,**

v.

**ST. REGIS PAPER COMPANY,
Plaintiff-Appellee.**

**No. 73–1369.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1973.

Decided Feb. 14, 1974.

James W. Clement, Chicago, Ill., for defendant-appellant; Ernest Cheslow, Chicago, Ill., on brief; Victor DeMarco, Jones, Day, Cockley & Reavis, Cleveland, Ohio, of counsel.

Charles R. Rust, Cleveland, Ohio, for plaintiff-appellee; Bruce B. Krost, Wodling, Krost, Granger & Rust, Cleveland, Ohio, on brief; Clyde H. Haynes, New York City, of counsel.

Before PHILLIPS, Chief Judge, and EDWARDS and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

Tee-Pak, Inc. (Tee-Pak) appeals from a grant of partial summary judgment holding claims 5 and 7 of Reissue Patent No. 24,992 invalid under 35 U.S.C. §§ 102(b) and 251. We reverse.

For an extensive discussion of the facts of this case reference is made to the opinion of the District Court, reported at 352 F.Supp. 309 (N.D.Ohio 1973). A summary of the pertinent facts will be stated in this opinion to the extent necessary to dispose of the issues presented on appeal.

Tee-Pak is the owner of Reissue Patent No. 24,992, reissued May 30, 1961, on an application filed August 11, 1960. The original patent, No. 2,847,313, was issued August 12, 1958, on an application filed December 1, 1955.

St. Regis Paper Co. (St. Regis) filed three motions for summary judgment of invalidity and one for summary judgment of non-infringement. These motions were based on: 1) 35 U.S.C. § 251, 2) 35 U.S.C. § 102 and § 103, 3) 35 U.S.C. § 112 and 4) 35 U.S.C. § 271, respectively. The District Court granted partial summary judgment and held claims 5 and 7, the only claims in issue, invalid under 35 U.S.C. §§ 102(b) and 251. We reverse. In so holding, we do not reach the questions presented by St. Regis' remaining motions for summary judgment. These were not decided by the District Court, and, in view of our disposition of the case, we also decline to rule on them.

## The Invention

The patent in issue is entitled "Method of Treating Fresh Meats" and relates to a method of wrapping fresh ground meat, such as beef, with a wrap so as to extend shelf life by postponing the formation of a bright red pigment.

Claims 5 and 7 are in issue. The essential steps of the patented method as set forth in independent claim 5 are:

1) Wrap fresh ground meat within about 30 minutes after comminution in a film having an oxygen permeability of about 0.01 x 10 (−10) to 1.0 x 10(−10) cc.-mm./sec./cm.$^2$/cm. Hg. at 30°C.

2) Maintaining the wrapped meat chilled for a period in excess of that which unwrapped meat would lose its attractive appearance.

3) Unwrapping the meat.

Claim 7 is dependent on claim 5 and recites that the meat is beef. The crucial aspects of this appeal revolve around step 1.

The theory behind the invention is to control the color cycle in fresh ground meat by optimizing its reaction kinetics. It is known that fresh cut meat has a purplish color which is not attractive to the consumer. Within about thirty minutes after cutting, the meat changes to a bright red color. This is known as "bloom", and it is this color which is attractive to the consumer. Continued exposure to the air causes the meat to take on a brown-grey appearance.

The chemistry and reaction kinetics of these changes are widely understood. Meat contains purple-red pigments called myoglobin and hemoglobin. When meat is exposed to the air, these pigments combine loosely with oxygen (*oxygenation*) to form oxymyoglobin and oxyhemoglobin. These pigments are scarlet-red and account for the "bloom." Continued exposure to the air causes these pigments to undergo an oxidation reaction, thereby forming metmyoglobin and methemoglobin which are brownish-grey in color.

These reactions are dependent on time, temperature, oxygen concentration and the presence of bacteria and enzymes. The patented method wraps the meat before the oxygenation reaction is completed. When the meat is ready for sale or consumption, the package is unwrapped. Shortly after opening, the meat turns a bright red color.

## Summary Judgment

A prerequisite to a grant of summary judgment is that there be no genuine issue as to material fact and that the moving party be entitled to a judgment as a matter of law. Rule 56, Fed.R. Civ.P.

In Bohn Aluminum and Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962), this court, speaking through Judge Weick, stated the guidelines governing motions for summary judgment:

"In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. 6 Moore's Federal Practice Par. 56.-15(3), pp. 2123–2126.

"It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute * * *.' 6 Moore's Federal Practice Par. 56.-11(1), p. 2057. See also: Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)."

In appropriate circumstances when the invention is easily understood and there is no need for expert testimony, summary judgment may be a useful tool in cases where the validity of a patent is involved. This court has upheld summary judgments of invalidity. *See,*

*e. g.,* Ballantyne Instruments and Electronics, Inc. v. Wagner, 345 F.2d 671 (6th Cir. 1965); Bobertz v. General Motors Corp., 228 F.2d 94 (6th Cir. 1955), cert. denied, 352 U.S. 824, 77 S.Ct. 32, 1 L.Ed.2d 47 (1956).

This tool, however, is to be used sparingly. In S. J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235, 237 (6th Cir.), cert. denied, 375 U. S. 824, 84 S.Ct. 65, 11 L.Ed.2d 57 (1963), this court, speaking through Judge Shackelford Miller, stated:

> "This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment wisely used is a praiseworthy and timesaving device, yet such prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. Knapp v. Kinsey, 249 F.2d 797, 801–803, C.A. 6th; Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427, C.A. 6th; Begnaud v. White, 170 F.2d 323, 327, C.A. 6th; Estepp v. Norfolk & W. Ry. Co., 192 F.2d 889, C.A. 6th; Bellak v. United Home Life Ins. Co., 211 F.2d 280, 283, C.A. 6th; Hoy v. Progress Pattern Co., 217 F.2d 701, 704, C.A. 6th. See: Sartor v. Arkansas Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738."

*See also* Hart v. Johnston, 389 F.2d 239 (6th Cir. 1968).

Moreover, in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court stressed the importance of a patentee having a full and fair opportunity to litigate the validity of his patent.[1] In view of this decision and the possibility of in rem invalidity, it is imperative that the court, in the words of Judge Weick, "construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn, supra,* at 427.

An additional consideration that is present in patent cases is the statutory presumption of validity. A patent is presumed valid and the burden of proving its invalidity rests squarely on the party challenging it. 35 U.S.C. § 282. Even though this presumption may be weakened by the failure of the Patent Office to consider all pertinent art, the degree by which it is weakened depends on a balancing of the pertinence of the newly cited art with the pertinence of the art considered by the Patent Office. Thus, unless the presumption has been destroyed, it is a relevant factor for the court to consider in ruling on a motion for summary judgment. *See Ballantyne, supra,* at 674.

### Anticipation

We have held that a description of a patented invention within the meaning of 35 U.S.C. § 102(b) [2] must be in "such full, clear and exact terms as to enable any person skilled in the art or science to which the invention appertains, to practice the invention. Vague and general representations are not sufficient in law to support the defense of anticipation under 35 U.S.C. § 102(b)." Ballan-

---

1. *See generally* Note, Patents—Collateral Estoppel—Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 60 Geo.L. J. 1126 (1972).

2. 35 U.S.C. § 102(b) provides in part:
   "A person shall be entitled to a patent unless—

\*     \*     \*     \*     \*

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . . "

tyne Instruments and Electronics, Inc. v. Wagner, supra, 345 F.2d 671, 673–674 (6th Cir. 1965). See also Allied Wheel Products, Inc. v. Rude, 206 F.2d 752, 759–760 (6th Cir. 1953).

With these considerations in mind, we turn now to the issues of this case. A comparison between claim 5 and the prior art relied on by the District Court in its opinion is as follows:

————◆————

### Food Industries Article
#### at page 22

"Even more important is the length of time the cut beef has been exposed to air before packaging. When cut, fresh beef has a purple-red hue—the true color of the flesh. But this color rapidly changes to a bright red, due to oxygenation of myoglobin present in the meat. If the meat is wrapped directly after it is cut—before the formation of oxymyoglobin—some wraps will never permit this reaction to occur. *Others that are slightly permeable to oxygen will eventually allow this reaction to take place.* (Emphasis added)."

### Claim 5

"A method for controlling the development of the incipient bloom, color and organoleptic characteristics of comminuted fresh meats which comprises enclosing comminuted fresh meat within about 30 minutes after comminution in a flexible film which has a permeability of oxygen through said film ranging from about 0.01 x 10(–10) to 1.0 x 10(–10) cc.-mm./sec./cm.²/cm. Hg. at 30° C., maintaining the said comminuted meat in the said film chilled for a period in excess of that at which unwrapped fresh meat loses a significant part of its red color after comminution, and then removing the said meat from its encasement in the said film for exposure to the atmosphere."

### DuPont Article

"After fresh beef is cut, it should be exposed to the air from 15 to 30 minutes before packaging . . . This allows the meat to attain the bright red color commonly associated with fresh beef.

\* \* \* \* \* \*

Tight, well-sealed packages . . . will maintain the color and freshness of red meats for 72 hours."

————◆————

■ A comparison between claim 5 and the two publications relied on by the District Court shows substantial differences between them. Neither publication explicitly pertains to ground meat nor explicitly discloses an oxygen permeability range. Thus, the publications do not describe the invention in full, clear and exact terms. In short, these publications are not anticipatory within the meaning of 35 U.S.C. § 102(b). *Ballantyne, supra.* *See also* Cee-Bee Chemical Co., Inc. v. Delco Chemicals, Inc., 263 F.2d 150, 153 (9th Cir. 1958).

■ In so holding, we do not make any conclusions, express or implied, as

to the obviousness of the claimed inventions. We hold merely that a comparison of the publications with the claims in issue convinces us that there are genuine issues of material fact.

An undisputed affidavit and art of record show that ground meat presents different problems in storage. Not only is bacteria intimately mixed with the meat, but also a greater surface area for reaction is presented. Because the color cycle is dependent on bacteria and oxygen concentration, the subtle difference between ground and cut meat may become substantial. This can only be ascertained at trial through the testimony of experts in the field.

Moreover, the failure of either reference to specify an oxygen permeability for the wrap presents a real factual issue as to what the publication *in fact* teaches one skilled in the art as to the characteristics of the wrap. For example, what is the meaning of "slightly permeable" in the Food Industries article? To hold that "slightly permeable" anticipates the claimed range is either to equate the two or to ignore the oxygen permeability limitation. We sanction neither technique.

The difference between the DuPont publication and claim 5 also is striking. A reasonable reading of the DuPont publication would seem to teach away from the claimed invention. This article teaches away from the patented method by allowing meat to develop full bloom and thereafter wrapping. The instant claims are directed to the postponement of the bloom until the meat is unwrapped. Tee-Pak's affidavit introduced in opposition to St. Regis' motion for summary judgment raises a factual issue as to whether the art taught away from the patented invention.

We find, therefore, that it was error for the trial judge to grant St. Regis' motion for summary judgment of invalidity on the grounds of anticipation under 35 U.S.C. § 102(b).

For the guidance of the District Court on remand, we add that another ground of error requiring reversal is the reliance by the District Court on a combination of references to anticipate the claimed invention. The District Court was of the opinion that invalidity under § 102(b) may be sustained if the elements of a claim are found in a collection of references. 352 F.Supp. at 312. The court also stated that the section implicitly contains the obviousness test although in a more limited way. *Id.* With this as rationale the District Court stated:

> "If this passage [Food Industries article] is read in conjunction with a 1951 DuPont publication, submitted with plaintiff's briefs, the thoroughness of the anticipation is even more evident." *Id.* at 313.

This court has stated:

> "In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way." Allied Wheel Products v. Rude, *supra,* 206 F.2d 752, 760 (6th Cir. 1953).

To like effect see Ceramic Tilers Supply, Inc. v. Tile Council of America, 378 F.2d 283, 284–285 (9th Cir. 1967); Soundscriber Corp. v. United States, 360 F.2d 954, 960, 175 Ct.Cl. 644 (1966); Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271 (6th Cir.), cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964); Firestone v. Aluminum Co. of America, 285 F.2d 928, 930 (6th Cir. 1960).

### Recapture

The District Court also invalidated the claims of the reissue patent under 35 U.S.C. § 251 as being a recapture of subject matter that had been abandoned during prosecution of the original patent. Abandoned claim 12 defined the wrapping material only in terms of its oxygen permeability. This claim was cancelled, and claims defining the wrap in terms of both oxygen permeability

*and* moisture vapor permeability were subsequently added and allowed. Reissue claims 5 and 7,[3] although substantially the same as abandoned claims 12 and 13 differ in a material aspect. Claims 5 and 7 recite the temperature at which the oxygen permeability is measured, whereas claim 12 did not. The temperature limitation was added to make the claims more definite.

■ It has long been the rule in this Circuit that a patentee may not recapture what he has abandoned intentionally at the insistence of the Patent Office in order to secure a patent. Such a devious practice does not constitute "error without any deceptive intention." *See, e. g.,* Quikey Mfg. Co. v. City Products Corp., 409 F.2d 876 (6th Cir. 1969); Nickerson v. Bearfoot Sole Co., 311 F.2d 858 (6th Cir. 1962), cert. denied, 375 U. S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963); Union Switch and Signal Co. v. Louisville Frog, Switch and Signal Co., 73 F.2d 550 (6th Cir. 1934). This rule applies regardless of whether the claims were broadened or narrowed, or whether the rejection was based on prior art or other grounds. 73 F.2d at 552. In *Union Switch, supra,* we stated:

"They fully understood the holding of the Commissioner, acquiesced in it, and through their attorney abandoned the claims and intentionally substituted those of the original patent. The mistake, if any, was in the failure of the applicants to appeal." *Id.*

In *Nickerson, supra,* this court stated:

"It is well settled that the deliberate withdrawal of a claim in order to obtain a patent does not involve inadvertence or error and is not a mistake of the kind which will justify the reissue of the patent including the matter previously withdrawn." 311 F.2d at 872.

The reissue statute, 35 U.S.C. § 251, provides, in pertinent part, as follows:

"Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue."

■ Assuming arguendo, that the reissue claims are for the same invention as the original claims,[4] the propriety of the recapture doctrine depends on certain factual determinations: 1) Are the reissue claims substantially identical to the abandoned claims? and 2) Were the critical limitations added or withdrawn at the insistence of the Patent Office? Both questions must be answered in the affirmative before the recapture doctrine can be applied.

■ The District Court held that reissue claim 5 was identical to original claim 12.[5] The thrust of this holding was based on the finding that since the temperature limitation was needed to make the claim operative, it did not limit the claim in any way.

Tee-Pak contends that abandoned claim 12 was operative when read in light of the specification and by one

---

3. Reissue claim 5 corresponds to abandoned claim 12, while reissue claim 7 corresponds to abandoned claim 13. Therefore, the validity of claim 7 depends upon the validity of claim 5.

4. Identity of invention has not been argued on appeal.

5. Absolute identity between the abandoned claim and the reissue claim is not required. *See Union Switch, supra* at 552. The test was succinctly stated in Riley v. Broadway-Hale Stores, Inc., 217 F.2d 530, 532 (9th Cir. 1954), as follows: "[W]hen the chief element added by reissue has been abandoned while seeking the original patent, the reissue is void."

skilled in the art and that reissue claim 5 is narrower in scope than claim 12.

We hold that the District Court's finding of claim identity was improper because it rested upon the resolution of disputed issues of material fact. It has been stated that the purpose of a hearing on a motion for summary judgment is not to resolve factual issues, but to determine if there is any genuine issue of material fact in dispute. Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962). Furthermore, even if the basic facts are not in dispute, summary judgment is still improper when the parties disagree as to the inferences to be drawn from these facts. As we said in S. J. Groves and Sons, supra:

> "It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts, or whether an estoppel or a waiver of certain rights admitted to exist should be drawn from such facts. Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment." [citations omitted] 315 F.2d at 237, 238.

See also Hart v. Johnston, 389 F.2d 239, 242 (6th Cir. 1968).

In deciding that reissue claim 5 was invalid as an attempted recapture of abandoned claim 12, the District Court drew the following conclusions: 1) Tee-Pak admitted that the moisture vapor permeability limitation was inserted at the insistence of the Patent Office. 2) Tee-Pak admitted and the submitted materials show that abandoned claim 12 was inoperative and indefinite. 3) The temperature limitation in reissue claim 5 did not limit abandoned claim 12 in any way.

We have examined the record and are convinced that these three conclusions involve the resolution of genuine issues of material fact, and were therefore improper. See Bohn Aluminum, supra.

The District Judge relied on the following statements to show that Tee-Pak allegedly admitted that the moisture vapor limitation was inserted at the insistence of the Patent Office:

Patentee's Deposition at 103–04

"Q When you refer to the limits being much closer than needed to have the invention succeed, what do you mean by that?

"A Well, as I have stated previously the concept that I had in mind, that I considered basic, and was the focal point of the invention, was the impermeability to oxygen. The moisture impermeability and the time factors were put in as a guide toward the practical limitations that should give the best results, and I did not discover these necessary changes. Those were discovered by the technical people. My discontentment with the patent as originally issued was that the claims that were in the application that were confined only to the oxygen impermeability were not allowed as such. They were tied into moisture impermeability."

Statements by Tee-Pak's Counsel at Hearing on Motion for Summary Judgment, Tr. at 23

"Now then, when the patent was issued, there was added a moisture-permeability limitation.

"And by the way, in your third question, your Honor, it was added obviously, knowingly added by the applicant, and after it was added, the patent was issued.

"But the question still remains thereafter as to whether it was error without deceptive intention. And this, by the way, is a question that can only be decided, we feel, at a full trial unless, indeed, the fact that St. Regis has failed to respond at all to the affidavits we have filed means they concede this point, and then if there is a summary judgment entered,

it should be entered in favor of Tee-Pak on the reissue question."

■ These statements do not constitute an admission that the moisture vapor permeability limitation was inserted at the insistence of the Patent Office. Counsel for Tee-Pak had specifically stated that the insertion was "error without deceptive intention."

St. Regis contends, by citing correspondence between Tee-Pak's attorneys, that the insertion was deliberate and intentional. Unquestionably this is true. However, a deliberate and intentional amendment to a claim may be error without deceptive intention. Thus, the amendment could have been made through accident, mistake or inadvertence. This issue can be resolved at trial by a careful study of the complete file wrappers of both the original and reissue patent applications and such other evidence as may be adduced.

We hold that it was error for the trial judge to infer that the moisture vapor permeability limitation was inserted at the insistence of the Patent Office.

The District Court also found abandoned claim 12 to be inoperative and indefinite without a temperature limitation for the oxygen permeability, and, therefore, addition of a temperature to claim 5 did not limit the subject matter of claim 12 in any way.

We do not agree with the trial judge's conclusion that the patentee admitted in his reissue oath that the original patent was inoperative without a temperature reference. The reissue oath states that the original patent was "inoperative to protect his invention fully and properly." This is a far cry from an admission that the patent was inoperative per se. The District Court also relied on statements made by Tee-Pak's counsel at the oral hearing on the motions for summary judgment to the effect that the original patent was somewhat indefinite. In the context of the overall record, we do not find this statement to be an admission that abandoned claim 12 was indefinite

per se within the meaning of 35 U.S.C. § 112.

This court has held that claims are to be read in light of the specification as by one skilled in the art. Tillotson Mfg. Co. v. Textron, Inc., Homelite, 337 F.2d 833 (6th Cir. 1964); Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 49 F.2d 886 (6th Cir. 1931). As we stated in *Tillotson:*

"There is nothing vague or confusing about this claim to a person skilled in the carburetor art. It must be interpreted in the light of the specification and drawings. The test is whether the disclosures make the invention clear to a mechanic skilled in the art so that he could construct the carburetor and use it. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940)." 337 F.2d at 840.

■ A judge may not interject his personal opinion to resolve such issues. As stated by Judge Learned Hand:

"To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it." Reiner v. I. Leon Co., Inc., 285 F.2d 501, 504 (2d Cir. 1961), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961).

In opposition to St. Regis' motion for summary judgment, Tee-Pak introduced an affidavit by Donald Bridgeford, an expert in the art. This affidavit raises questions of fact as to: 1) the meaning of oxygen permeability without a temperature reference point to one skilled in the art, and 2) whether reissue claim 5 is more limited in scope than abandoned claim 12.

We find, therefore, that it was error for the trial judge to grant St. Regis' motion for summary judgment of invalidity as to reissue claims 5 and 7 under 35 U.S.C. § 251.

This case is reversed and remanded for proceedings not inconsistent with this opinion.