**ALCO STANDARD CORPORATION, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Third-Party Defendant.**

No. C–77–2513.

United States District Court, W. D. Tennessee, W. D.

May 29, 1981.

Rolf O. Stadheim and Gomer Walters, Haight, Hofeldt, Davis & Jambor, Chicago, Ill., W. Michael Richards, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, Tenn., for plaintiff.

John F. Lynch and Alan H. Gordon, Arnold, White & Durkee, Houston, Tex., Robert M. Johnson, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for third party defendant.

## ORDER DENYING SUMMARY JUDGMENT

HORTON, District Judge.

The plaintiff, an assignee of a patent, has sued for damages based on the alleged in-

fringement of six of its patent claims on an ultrasonic inspection device for turbine rotors. The third party defendant, Westinghouse, has moved for summary judgment under the 35 U.S.C. § 102(b) defense of anticipation based on an alleged description of the invention in a publication more than one year prior to the patent application. The court finds that the article which contained the alleged description does not meet the full, clear and exact standard of description so as to constitute an anticipation of any of plaintiff's patent claims. Therefore the Court denies the motion for summary judgment.

Plaintiff originally filed this action against both the Tennessee Valley Authority (TVA) and Westinghouse Electric Corporation under the patent laws and alleged infringement of the plaintiff's United States Letters Patent Number 3,960,006 for an invention in ultrasonic bore inspection systems. This system is used to detect flaws in large steam turbine rotors found in electric generating plants and was allegedly used by Westinghouse in conducting inspections for TVA. The plaintiff also charged that Westinghouse had infringed its patent in conjunction with others and had committed acts of unfair competition against it. After filing its original answer, the defendant TVA filed an amendment to its answer to assert a crossclaim against its co-defendant Westinghouse for indemnity on the contract of inspection during the performance of which the alleged infringement arose. The defendant Westinghouse then filed its motion to dismiss the claims of the plaintiff against it based on failure to state a claim upon which relief can be granted, improper venue and lack of subject matter jurisdiction. The Honorable Bailey Brown, prior to his elevation to the Sixth Circuit Court of Appeals, issued an order, D.C., 448 F.Supp. 1175, dismissing all claims against the defendant Westinghouse, but leaving intact the claim for indemnity made by TVA against Westinghouse. In his order, Judge Brown ruled that under Section 19 of the

Tennessee Valley Authority Act, 16 U.S.C. § 831r, the defendant TVA could use patented inventions subject to the provision of reasonable compensation to the patentee. He then found that the immunity under this section extended to Westinghouse as an independent contractor as it used the patented invention for TVA with the demonstrated authorization or consent of that agency. Thus, Judge Brown concluded that the plaintiff's exclusive remedy, in regard to the defendant's inspections done for TVA, was a claim against TVA for reasonable compensation under Section 19 of the Tennessee Valley Authority Act. Judge Brown also dismissed the claims against Westinghouse, which were based upon alleged infringements involving other entities, due to improper venue under 28 U.S.C. § 1400(b). Due to the dismissal of the patent infringement claims against Westinghouse, Judge Brown dismissed the pendent state claims of unfair competition. Westinghouse, now in its capacity as third party defendant, has filed a motion for summary judgment based on 35 U.S.C. § 102(b) and seeks to have this Court declare the plaintiff's patent invalid as a matter of law.

Section 102(b) provides that a patent may be invalidated if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...." Westinghouse contends that the plaintiff's invention was described in a published article, *Ultrasonic Inspection of the Nimrod Power Plant Alternator Rotors*, by H. C. Brooks, A. W. Brown and A. C. Rankin which appeared in England in September of 1963 (hereinafter referred to as the Nimrod article). The application for the patent was filed on December 3, 1973 and the patent was issued on June 1, 1976.[1] The patent consists of thirteen claims but this action is based on the alleged infringement of only

---

1. The patent was applied for and issued to Robert D. Smith who then assigned the patent to the plaintiff.

claims 1, 2, 3, 7, 8, and 10. Defendant contends that each of these claims embodied in plaintiff's patent are described in the published article. Through the medium of requests for admissions, the plaintiff has admitted that the Nimrod article was published at least as early as January 1, 1972, i. e., more than one year prior to the filing of the patent application which ripened into Patent Number 3,960,006. (Plaintiff's Response to Westinghouse Electric Corporation's Request for Admission No. 7).

Simplistically stated, the patent sets forth a method and apparatus for the inspection of high speed rotors, by the use of sound waves projected through a central bore which extends through the axis of the rotor in order to detect flaws inside the rotor, while it is in operation. The apparatus can inspect the rotor's interior from any position on the length of the central bore as well as upon the bore's radius. Such inspections are essential due to the stress placed upon the rotor by the high revolutions at which it operates. Any flaws in the metal of the rotor can result in the failure or bursting of the rotor under the pressure of the high speed. Through the use of a pulse-echo technique, the reflected sound waves pinpoint any defects or flaws of the rotor's interior. The ultrasonic energy may be transmitted in one of three modes: 1) the "longitudinal" mode in which the wave makes contact with the surface mass in a perpendicular or right-angle manner; 2) the "shear" mode in which the wave contacts the surface mass at an oblique angle; and 3) the "surface" mode in which the waves run parallel along the surface mass. Although both the patent and the Nimrod article discuss the use of all three wave modes, the claimed infringements involve usage of only the longitudinal and shear modes in the inspection of rotors. Of the six claims on which the plaintiff bases its allegations of infringement, three describe a method of utilizing ultrasonic waves to inspect the rotors (claims 7, 8, and 10) whereas the other three describe an apparatus to be employed in order to effect these methods of ultrasonic inspection (claims 1, 2, and 3). Each of these claims must be considered separately "for 'in contemplation of law, each claim of the patent must be considered as setting forth a complete and independent invention.'" *Ballantyne Instruments & Electronics, Inc. v. Wagner*, 345 F.2d 670, 674 (6th Cir. 1965) (citation omitted).

Upon attempting to invalidate a patent by a motion for summary judgment, the movant bears a heavy burden. The Patent Code itself declares that "A patent shall be presumed valid. Each claim of a patent (whether independent, dependent or multiple dependent form) shall be presumed valid independently of the validity of other claims.... The burden of establishing invalidity of a patent shall rest on a party asserting it." 35 U.S.C. § 282. As our distinguished predecessor Judge Bailey Brown has noted, a court must be aware of its duty to "exercise unusual caution" in its consideration of a motion for summary judgment as to the invalidity of a patent. *Taylor v. Ford Motor Co.*, 154 U.S.P.Q. 349, 353 (W.D.Tenn.1967). The Sixth Circuit has declared that:

> In appropriate circumstances when the invention is easily understood and there is no need for expert testimony, summary judgment may be a useful tool in cases where the validity of a patent is involved. This court has upheld summary judgments of invalidity.

This tool, however, is to be used sparingly. *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195–96 (6th Cir. 1974) (citations omitted). However, in *Tee-Pak* the appellate court also cautioned that the evidence must be considered in the light most favorable to the party opposing the motion for summary judgment of invalidity and that courts should be slow to dispose of cases of any complexity on a motion for summary judgment. The Court likewise stressed the statutory presumption of validity of a patent as well as the importance of a patentee being afforded a full and fair opportunity to litigate the validity of its patent. 491 F.2d at 1196. Finally, this Court is mindful of the words of that eminent jurist, Judge Learned Hand, who char-

acterized the question of patent validity to be "as fugitive, impalpable, wayward, and vague a phantom as exists in the whole paraphernalia of legal concepts." *Harries v. Air King Products Co.*, 183 F.2d 158, 162 (2d Cir. 1950).

In the present case the defendant Westinghouse seeks to have this Court declare the plaintiff's patent invalid under the statutory defense of anticipation as codified in 35 U.S.C. § 102(b). Westinghouse contends that the Nimrod article described the six disputed claims of the patent more than one year before the patent application was filed and therefore the patent should never have been issued. It is important to remember that the defense of anticipation harks back to the three criteria necessary to the original grant of a patent: novelty, utility, and invention. *Allied Wheel Products, Inc. v. Rude*, 206 F.2d 752, 760 (6th Cir. 1953). The defense of anticipation is in actuality an allegation that the claim, when it originally was sought to be patented, lacked novelty. "Novelty does not exist if the patented device has been anticipated by a prior device, whether patented or not." *Monroe Auto Equipment Co. v. Heckethorn Manufacturing & Supply Co.*, 332 F.2d 406, 414 (6th Cir. 1964). If novelty is disproved, then the patent was erroneously issued and the patentee cannot base a claim of infringement upon it.

The portion of 35 U.S.C. § 102(b) upon which the defendant bases its summary judgment motion declares that if "the invention was . . . described in a printed publication in this or a foreign country . . .

more than one year prior to the date of the application for patent in the United States" the patent is invalid.[2] The defense of anticipation is a strictly construed defense. *Research Corp. v. Nasco Industries, Inc.*, 501 F.2d 358, 362 (7th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974).[3] The reason for such a strict application of the defense can be readily ascertained by examination of the case history of the Wagner Patent Claims for methods of frying chicken in the *Ballantyne* cases. In the original district court opinion, the trial judge granted a motion for summary judgment as to all three claims based on the defense of anticipation through description in a prior publication. *Ballantyne Instruments & Electronics Inc. v. Wagner*, 227 F.Supp. 394 (S.D.Ohio 1964). On appeal the Sixth Circuit found that the requisite clarity and fullness of description were lacking as to two of the claims and reversed the grant of summary judgment as to these claims. *Ballantyne Instruments & Electronics Inc. v. Wagner*, 345 F.2d 671 (6th Cir. 1965) (*Ballantyne I*). After a trial on the merits of these claims, the district judge entered a judgment declaring that both of the claims were valid. *Ballantyne Instruments & Electronics Inc. v. Wagner*, 260 F.Supp. 540 (S.D.Ohio 1966). The Sixth Circuit, on appeal, affirmed the finding. *Ballantyne Instruments & Electronics Inc. v. Wagner*, 386 F.2d 789 (6th Cir. 1967) (*Ballantyne II*). In *Ballantyne I* the court of appeals articulated the strict standard to which a defendant is held when asserting an anticipation defense by way of descrip-

**2.** Anticipation may also be found if the device has been previously patented in this or a foreign country or has been on sale or in public use in this country for more than one year prior to the United States patent application. Here we deal only with anticipation through a description in a prior foreign publication.

**3.** The Court observes that in the present case the defendant has not attempted to circumvent the strictness attendant to a § 102(b) anticipation defense by also claiming the defense of "obviousness" as codified in 35 U.S.C. § 103, which states that:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Therefore this Court will not consider whether the methods and apparatuses under judicial scrutiny were obvious under the standards embodied in section 103.

tion in a prior publication. The court declared that:

To constitute a "description" of the patented invention within the meaning of 35 U.S.C. § 102(b) the prior publication must describe the invention as claimed in such *full, clear and exact terms* as to enable any person skilled in the art or science to which the invention appertains, to practice the invention. Vague and general representations are not sufficient in law to support the defense of anticipation under 35 U.S.C. § 102(b).

345 F.2d at 674 (Emphasis added). *Accord, Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1196 (6th Cir. 1974).

In regard to the apparatus claims of the plaintiff's patent, claims 1, 2, and 3, the Court finds that the Nimrod article does not meet the strict criteria which would constitute a description under 35 U.S.C. § 102(b). The Nimrod article does not describe the apparatus of the plaintiff's patent claims 1, 2, and 3 fully, clearly and exactly. Among the differences which the Court observes in the apparatus described in the Nimrod article and in claims 1, 2, and 3 of the plaintiff's patent are:

| The Patent Claim 1 | The Nimrod Article |
|---|---|
| 1. No mention is made of angular correction of the placement of the probe head. | The probe allows for linear movement as well as angular movement for the scanning tube position. |
| 2. The probe head contains two signal sources, each of which is capable of transmitting <u>simultaneously</u> at least two ultrasonic signal modes, as well as a pick-up means to receive the simultaneous signals. | The probe contains a one mode combined transmitter-receiver in that 2 transducers are mounted side by side in a common probe head and each is insulated electrically and acoustically from the other. One transducer acts as a transmitter while the other transducer acts as a detector of ultrasonic pulses. |
| 3. The receiving device correlates the signals of several modes at once. | The receiving device only receives one mode at a time and it is necessary to compare the individual films recorded by the 16mm camera to accomplish correlation. |

| The Patent Claim 2 | The Nimrod Article |
|---|---|
| 1. No mention is made of angular correction of the placement of the probe head. | The probe allows for linear movement as well as angular correction movement for the scanning tube position. |
| 2. There is one probe which contains signal sources to utilize longitudinal, shear and surface modes <u>simultaneously</u> with one insertion. | There is a separate probe required for each type of mode utilized and therefore multiple insertions are necessary. |
| 3. The receiving device correlates the signals of several modes at once. | The receiving device only receives one mode at a time and it is necessary to compare the individual films recorded by the 16mm camera to accomplish correlation. |

| The Patent Claim 3 | The Nimrod Article |
|---|---|
| 1. No mention is made of angular correction of the placement of the probe head. | The probe allows for linear movement as well as angular correction movement for the scanning tube position. |
| 2. The probe contains two sources of ultrasonic signals which can utilize two modes <u>simultaneously</u>. | There is a separate probe required for each type of mode utilized and therefore multiple insertions are necessary. |
| 3. The receiving device correlates the signals of several modes at once. | The receiving device only receives one mode at a time. |

The court also observes that from the Summary of the Invention and Description of the Preferred Embodiment found in the patent, other differences emerge between the article and the patent. While claim 3 mentions a couplant, the summary of the invention suggests the use of water as the liquid couplant in which the transmitters and receivers are encased. The Nimrod article mentions the use of a liquid couplant also, but designates only oil as the liquid to be utilized. While the patent in its Description of the Preferred Embodiment notes that the probe whether in claims 1, 2, or 3, has static lengths of shaft to which additional static lengths of probe may be added to increase length, the Nimrod article describes a probe that utilizes a retractable shaft assembly for control of length. Claim 3 calls for the utilization of a bias means for correct fit of the probe into the carriage and the summary of invention details use of pneumatic or spring pressure to accommodate the probe to the size of the rotor's bore. The Nimrod article instead calls for the utilization of only spring bias pressure to accommodate the probe to the size of the rotor's bore.

Although the major difference, between the Nimrod article apparatus and the apparatus of patent claims 1, 2, and 3, appears to be the element of simultaneousness of modes found in the patent apparatus, the court feels expert testimony is necessary to determine the material fact question as to whether the Nimrod article in fact teaches one skilled in the art that simultaneousness of transmittal and receipt of modes is possible. The depositions relied upon by Westinghouse to buttress its motion for summary judgment and claim that the simultaneousness is an insignificant difference, merely disclose that the Nimrod article description does "not necessarily" disclose inspections to be conducted with multiple ultrasonic modes. (Deposition of James K. Wallace at page 263.) Although the original inventor of the apparatus, Robert D. Smith stated in his deposition that simultaneousness of modes in regard to pulse echo transducers gives only an economic advantage (Deposition of Robert D. Smith at page 145.), the court feels a material question exists as to the significance of this factor. This is especially true in light of the Nimrod article's statement that the complete inspection of a rotor with one vertical probe can be completed in three (3) working days. Thus the time-saving aspect of the plaintiff's device could be significant. The court also disagrees with defense counsel's characterization of the correlation of the results of testing in the various modes as merely an operator function to be accomplished in the mind of the device's operator. The correlation contemplated by the patent claims could make a significant difference in the amount of information and detail of such information gleaned by use of the ultrasonic probes. Again a material fact question exists as to the importance of this factor. Therefore the court denies summary judgment under section 102(b) in regard to alleged anticipation of patent claims 1, 2, and 3.

The court now arrives at its consideration of the method claims of the plaintiff's patent. The only differences between the methods described in claims 7, 8 and 10 are that 7 speaks in terms of using more than one mode of ultrasonic signals (though no reference to simultaneousness is made) and claim 10 is the same as claim 8, but the inspection is to be done after the flaws detected by the original inspection have been corrected in order to ascertain if the repairs have been effective. Although the method claims of the patent found in claims 7, 8 and 10 lack an abundance of detail, each of these three claims contain two references which are not present in the Nimrod article. The differences are as follows:

| Patent Claims 7, 8 and 10 | The Nimrod Article |
|---|---|
| 1. The method described relates to providing a three-dimensional analysis of flaws within the rotor. | No reference to three-dimensional analysis is made. |

| Patent Claims 7, 8 and 10 | The Nimrod Article |
|---|---|
| 2. Correlation of the various modes of ultrasonic signals involves plotting the path of the various modes of sound waves on a <u>three-dimensional matrix</u>. | Correlation of the modes is accomplished by comparison of 16 mm films of the results of the projections of the various modes of ultrasonic waves. |

The three-dimensional factor along with the correlation technique mentioned by the claims, both prevent the description in the article from meeting the "full, clear and exact" standard requisite to the anticipation defense of section 102(b). *Ballantyne I, supra.* Material fact questions exist as to the significance of these factors which are not mentioned in the Nimrod article. For this reason, summary judgment on the method claims 7, 8 and 10 is inappropriate and is denied.

It is therefore, by the Court

ORDERED that the motion for summary judgment is denied.